# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 16-60574

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LINDSEY JOHNSON,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

January 23, 2018

Lyle W. Cayce
Clerk

———————————

Appeal from the United States District Court
for the Southern District of Mississippi

———————————

Before DENNIS, CLEMENT, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

In this appeal, Defendant Lindsey Johnson raises several challenges to his conviction and sentence for carjacking and two related firearm offenses. We affirm in full but remand for the district court to correct a clerical error in its judgment.

## I.

On the afternoon of August 2, 2015, Johnson encountered Jeremy McNeal at an apartment complex in Jackson, Mississippi. The two men's accounts of what happened next differ greatly, but it is undisputed that Johnson left the complex at the wheel of McNeal's Lexus. Police soon spotted the car and, acting on a report that the vehicle had been stolen, began a

pursuit. After a brief chase, Johnson surrendered and was arrested. A search of the Lexus yielded two firearms: a silver Rossi revolver under the driver's seat and a black .40 caliber Smith & Wesson handgun under the passenger's seat. Police also found a small quantity of marijuana. A drug-detecting K-9 unit was subsequently called to the scene and uncovered a larger quantity of marijuana in a hidden compartment under the car's gearshift. Johnson was ultimately charged in a three-count indictment with: carjacking under 18 U.S.C. § 2119 (Count 1); being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 2); and brandishing a firearm in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A)(ii) (Count 3).

At trial, the Government presented the case as a straightforward carjacking. The Government's principal witness was McNeal, who testified that he was talking to a friend named Jaron Thompson when Johnson walked up to McNeal's Lexus, pulled out a handgun, and ordered McNeal to exit the car. McNeal complied, and Johnson left in the Lexus. The Government also called two other eyewitnesses, Thompson and Jamia Harney. Thompson stated that he was walking away from McNeal when he turned around to see Johnson standing near McNeal's car. Johnson showed McNeal a small bag of marijuana, then pulled out a revolver and told McNeal to "get out of the car" and "give me everything you got." When McNeal exited the Lexus, Johnson got in and sped out of the apartment complex. Harney, a resident of the apartment complex, testified that she saw a young man pointing a silver gun at a car. The person in the car got out and ran off, and the man holding the gun pulled away in the vehicle.

The defense portrayed the incident as a drug deal gone bad. Johnson testified that he was visiting the apartment complex in order to obtain information about an assault he had suffered the previous night. Johnson and McNeal discussed the assault, after which Johnson sought to purchase drugs

No. 16-60574

from McNeal. McNeal told Johnson to get into the Lexus. When Johnson did so, McNeal told him to put whatever money he wanted to spend in the center armrest. Johnson opened the armrest and saw a silver revolver, which McNeal then attempted to grab. Johnson pushed McNeal's hand away, causing McNeal to drop the gun. McNeal said something like "I'm going to get you" and exited the Lexus, and Johnson immediately departed in the vehicle.

The jury convicted Johnson on all three counts, and the district court sentenced him to 180 months in prison and three years of supervised release.

## II.

On cross-examination by the defense, McNeal denied ever owning a gun. Defense counsel then showed McNeal printouts of several posts from McNeal's Facebook page. One post featured a photograph of a handgun on a nightstand near a large stack of cash; McNeal stated that he did not know who owned the gun in the picture. Other posts featured photos of McNeal and a young child holding large sums of cash, and one post appears to show marijuana. Upon further questioning, McNeal admitted that he only earned $250 a week from his employment but denied selling drugs. Defense counsel then sought to introduce the Facebook posts into evidence, arguing that they went to McNeal's credibility. The district court, however, sustained the Government's objection and denied admission of the posts. Johnson challenges that ruling.

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Tuma*, 738 F.3d 681, 687 (5th Cir. 2013); *United States v. Lowery*, 135 F.3d 957, 959 (5th Cir. 1998). "[A]ny error made in excluding evidence is subject to the harmless error doctrine and does not necessitate reversal unless it affected the defendant's substantial rights." *Tuma*, 738 F.3d at 687–88 (internal quotation marks and citation omitted); *accord Lowery*, 135 F.3d at 959. "In assessing any error, we must consider the other evidence in the case and determine whether the improperly excluded evidence, if admitted,

would have had a substantial impact on the jury's verdict." *Tuma*, 738 F.3d at 688 (internal quotation marks and citation omitted).

We conclude that even if the district court erred by excluding McNeal's Facebook posts, Johnson has failed to show that that error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Lowery*, 135 F.3d at 959 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). None of the posts directly contradicted any of McNeal's testimony at trial. The photo of the firearm on the nightstand does not establish that McNeal ever owned a gun, nor do the photos of cash and marijuana show that McNeal was a drug dealer. The photos may have indirectly supported some aspects of Johnson's testimony and diminished McNeal's credibility to some extent. But when viewed in light of the evidence as a whole—especially Thompson and Harney's independent eyewitness testimony and the undisputed facts surrounding Johnson's arrest—we cannot conclude that admission of the Facebook posts would have had a "substantial impact" on the jury's ultimate verdict.

III.

Subject to certain limitations not relevant to this case, 18 U.S.C. § 922(g)(1) prohibits any person who has been convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing "any firearm." To obtain a conviction under this provision, the Government must prove beyond a reasonable doubt "that the defendant previously had been convicted of a felony." *United States v. Guidry*, 406 F.3d 314, 318 (5th Cir. 2005) (citing *United States v. Daugherty*, 264 F.3d 513, 515 (5th Cir. 2001)).

In connection with the Count 2 charge, Johnson and the Government agreed to a stipulation stating that Johnson "had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is, a felony offense, on or before August 2, 2015." That stipulation was read to the

jury and entered into evidence as an exhibit. Despite that stipulation, however, the Government opened its cross-examination of Johnson as follows:

> Q:    Mr. Johnson, you've been convicted of three prior felonies, have you not?
>
> A:    Yes, sir.
>
> Q:    Name them.
>
> A:    Two—

Defense counsel then objected. Citing the stipulation and the Supreme Court's ruling in *Old Chief v. United States*, 519 U.S. 172 (1997), the defense asked the district court to declare a mistrial. The court refused to do so but admonished the Government (outside of the jury's presence) that if it "elicit[ed] anything else about the nature of these convictions," particularly the fact that they were for carjacking offenses, a mistrial would indeed result.

In general, "a defendant who takes the stand to testify in his own defense may be impeached by proof of prior felony convictions." *United States v. Bray*, 445 F.2d 178, 181 (5th Cir. 1971). In *Old Chief*, however, the Supreme Court held that when a defendant charged with violating § 922(g)(1) offers to concede the fact of a prior conviction and the "name or nature of the prior offense raises the risk of a verdict tainted by improper considerations," a court may not admit the full record of the prior judgment if the purpose of doing so "is solely to prove the element of prior conviction." 519 U.S. at 174. Johnson maintains that the Government's questioning in the present case violated *Old Chief* and therefore mandated a mistrial. However, unlike *Old Chief*, the Government in this case only elicited testimony about the *number* of Johnson's prior convictions. Due to defense counsel's timely objection, the Government failed to elicit any information regarding the "name or nature" of Johnson's prior convictions. *Old Chief* is therefore inapposite.

Johnson further contends that the Government's reference to Johnson's "three prior felonies" constitutes an improper prejudicial remark amounting to prosecutorial misconduct.

> We apply a two-step analysis to claims of prosecutorial misconduct: First, we assess whether the prosecutor made an improper remark. If so, we determine whether the defendant was prejudiced—a "high bar." *United States v. Davis,* 609 F.3d 663, 677 (5th Cir. 2010) (internal quotation marks omitted). The prejudice prong turns on whether the prosecutor's remarks "cast serious doubt on the correctness of the jury's verdict." *Id.* (internal quotation marks omitted). We look to three factors in deciding whether the improper remarks "cast serious doubt": "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *Id.* (internal quotation marks omitted).

*United States v. Rodriguez-Lopez*, 756 F.3d 422, 433 (5th Cir. 2014).

Assuming that the Government's remark here was "improper," we conclude that Johnson has failed to demonstrate that he suffered prejudice sufficient to require a new trial. First, referring to the fact that Johnson had sustained *three* prior felony convictions likely had some prejudicial impact, but since the Government did not mention the prior convictions by name, any such impact was limited. Second, the district court included a limiting instruction in the jury charge stating that "[t]he fact that the defendant was previously found guilty of a crime does not mean that [he] committed the crime for which [he] is on trial, and you must not use this prior conviction as proof of the crime charged in this case." Third, the evidence supporting Johnson's conviction is relatively strong. Taking these factors together, we perceive no basis for concluding that the Government's remark "cast serious doubt on the correctness of the jury's verdict." *Rodriguez-Lopez*, 756 F.3d at 433.

No. 16-60574

IV.

The district court applied a two-level enhancement to Johnson's sentence pursuant to § 3C1.1 of the Sentencing Guidelines. That provision applies when:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense . . . .

U.S.S.G. § 3C1.1. Perjury falls within the scope of § 3C1.1 when a defendant "provides 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Smith*, 804 F.3d 724, 737 (5th Cir. 2015) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)).

The district court determined that application of this enhancement was appropriate based on its finding that Johnson "lied while he took the stand" and "directly contradicted" the eyewitnesses' testimony. The court acknowledged that the other witnesses' testimony was not without shortcomings but nonetheless concluded that "their stories made much more logical sense than that of [Johnson] who was trying to lie—who was lying trying to get out of the charges." The court noted, in particular, that Johnson's "story made no sense in connection with the actions that he took after the incident which involved a car chase and an attempt to try to flee the scene"— actions that Johnson had "no reason" to take "if, in fact, his story was the correct one."

Bearing in mind the "particular deference" we give to a district court's credibility determinations, we conclude that the district court's findings in this case are "plausible in light of the record as a whole," particularly since there is no indication that Johnson's testimony resulted from "confusion, mistake, or

7

faulty memory." *Smith*, 804 F.3d at 737. We stress, however, that our conclusion is closely tethered to the particular facts of this case and the reasons specifically articulated on the record by the district court. Using § 3C1.1 in other, less obvious contexts would impermissibly risk transforming the enhancement into a de facto penalty on defendants who exercise their right to testify in their own behalf.

## V.

Johnson next argues that the district court erroneously calculated his base offense level because neither of his two prior state convictions for armed carjacking qualifies as a "crime of violence" under § 2K2.1(a)(4)(A) of the Sentencing Guidelines. Since Johnson filed objections on these grounds below, we review the district court's "interpretation and application of the Guidelines de novo and its factual findings for clear error." *United States v. Johnson*, 619 F.3d 469, 472 (5th Cir. 2010).

Section 2K2.1(a)(4)(A) sets the base offense level for unlawful possession of a firearm at 20 if "the defendant committed any part of [that] offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." The commentary to § 2K2.1 states that the term "crime of violence" has "the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." U.S.S.G. § 2K2.1, comment. (n.1). Section 4B1.2(a), in turn, defines "crime of violence" to include "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).[1]

---

[1] Prior to August 1, 2016, § 4B1.2(a)(2) contained the so-called residual clause, which defined "crime of violence" to also include any offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." Johnson argues that the

No. 16-60574

In *Johnson v. United States*, 559 U.S. 133 (2010), the Supreme Court held that the phrase "physical force," as used in the Armed Career Criminal Act's (ACCA) definition of "violent felony" (codified at 18 U.S.C. § 924(e)(2)(B)(i)), means "violent force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140 (emphasis in original). So far as this case is concerned, § 4B1.2(a)(1)'s definition of "crime of violence," as incorporated in § 2K2.1(a)(4)(A), is identical to the ACCA's definition of "violent felony." *See* 18 U.S.C. § 924(e)(2)(B)(i) (defining "violent felony" to include "any crime punishable by imprisonment for a term exceeding one year . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another"). Thus, *Johnson*'s definition of "physical force" applies in determining whether Johnson's prior carjacking convictions had "as an element the use, attempted use, or threatened use of physical force against the person of another." *See United States v. Jones*, 752 F.3d 1039, 1041 (5th Cir. 2014) (noting that, in interpreting "§ 4B1.2(a) of the Guidelines, our court has considered decisions of the Supreme Court construing the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B), to be instructive"); *United States v. Marquez*, 626 F.3d 214, 217 (5th Cir. 2010); *United States v. St. Clair*, 608 F. App'x 192, 194 (5th Cir. 2015) (unpublished decision) ("[O]ur precedent regarding ACCA's definition of a violent felony is directly applicable to the Guidelines definition of a crime of violence."); *United States v. Martin*, 864 F.3d 1281, 1283 (11th Cir. 2017) ("[A]n offense that is a violent felony under the ACCA is a crime of violence under § 2K2.1.").

---

residual clause is unconstitutionally vague, but the district court did not base its calculation on that provision. In any event, the Supreme Court has held that the Sentencing Guidelines are not subject to vagueness challenges under the Due Process Clause. *Beckles v. United States*, 137 S. Ct. 886 (2017).

No. 16-60574

Johnson argues that the offense of armed carjacking under Mississippi law is not a "crime of violence" because it does not have "as an element the use, attempted use, or threatened use" of *violent* force. "In determining if a prior conviction is for an offense enumerated or defined in a Guidelines provision, we generally apply the categorical approach and look to the elements of the offense enumerated or defined by the Guideline section and compare those elements to the elements of the prior offense for which the defendant was convicted." *United States v. Howell*, 838 F.3d 489, 494 (5th Cir. 2016). "We do not consider the actual conduct of the defendant in committing the offense." *Id.*

Johnson's prior convictions were for armed carjacking under the Mississippi carjacking statute, which states, in pertinent part:

> (1) Whoever shall knowingly or recklessly by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, or attempting to do so, or by any other means shall take a motor vehicle from another person's immediate actual possession shall be guilty of carjacking.

> \* \* \*

> (2) Whoever commits the offense of carjacking while armed with or having readily available any pistol or other firearm or imitation thereof or other dangerous or deadly weapon, including a sawed-off shotgun, shotgun, machine gun, rifle, dirk, bowie knife, butcher knife, switchblade, razor, blackjack, billy, or metallic or other false knuckles, or any object capable of inflicting death or serious bodily harm, shall be guilty of armed carjacking.

> \* \* \*

MISS. CODE ANN. § 97-3-117.

The Mississippi Supreme Court has held that:

> [T]he statutory elements for carjacking are (1) a taking of a motor vehicle (2) from someone's immediate actual possession (3) by force, stealth or violence. Force or violence includes putting the victim in fear of the same. Use of a firearm or other deadly or dangerous weapon elevates the crime to armed carjacking.

10

No. 16-60574

*Smith v. State*, 907 So.2d 292, 296 (Miss. 2005) (construing the statute's elements for purposes of determining whether a jury instruction on a lesser-included offense should have been given).

The parties do not cite, and we have not found, any Mississippi caselaw explaining the distinction, if any, between carjacking by "force" and carjacking by "violence." So far as *armed* carjacking is concerned, we conclude that the "force or violence" element necessarily entails, at a minimum, the threatened use of *violent* force—i.e., force capable of causing physical pain or injury to another person.[2] Johnson maintains that the statutory language permits an armed carjacking conviction so long as a firearm is "readily available" to the perpetrator, regardless of whether the victim is threatened by, or even knows about, the presence of such a weapon. This is a possible reading of the statute's language, but we see no realistic probability that the statute would ever be applied in such a manner, given the Mississippi Supreme Court's strong indication that actual "use of a firearm" is required to sustain an armed carjacking conviction. *See Smith*, 907 So.2d at 296.

Accordingly, we find no merit in Johnson's challenge to the district court's application of § 2K2.1(a)(4)(A).

## VI.

18 U.S.C. § 924(c)(1)(A)(ii) prohibits brandishing a firearm "during and in relation to any crime of violence." Section 924(c)(3) defines the term "crime of violence" as a felony offense that either:

> **(A)** has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

---

[2] Neither Johnson nor the Government has presented any argument regarding carjacking by "stealth." We express no opinion on that aspect of Mississippi's carjacking statute, and our decision today does not foreclose future litigants from raising arguments in connection therewith.

No. 16-60574

**(B)** that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

Johnson argues that the district court should have set aside his conviction under this provision. First, he contends that § 924(c)(3)(B) is unconstitutionally vague based on the Supreme Court's opinion in *Johnson v. United States*, 135 S. Ct. 2551 (2015). Second, he argues that his Count 1 carjacking conviction does not satisfy § 924(c)(3)(A)'s "physical force" requirement because the federal carjacking statute includes carjacking "by intimidation." *See* 18 U.S.C. § 2119 (proscribing the "tak[ing] [of] a motor vehicle . . . from the person or presence of another by force and violence *or by intimidation*" (emphasis added)). Both of these arguments, however, are foreclosed by this circuit's decision in *United States v. Jones*, 854 F.3d 737, 739–41 (5th Cir. 2017) (holding that "the definition of 'crime of violence' under § 924(c)(3)(B) is not unconstitutionally vague," and that carjacking under 18 U.S.C. § 2119 "fits under the definition set forth in § 924(c)(3)(A)" because carjacking by "intimidation" requires a threat of "violent force").

## VII.

The district court's amended judgment states that "[u]pon release from imprisonment, the defendant shall be on supervised release for a term of: 3 year(s) as to Counts 1 and 2, and 5 years as to Count 5, all to run concurrent to each other." Although neither Johnson nor the Government raises the point on appeal, the reference to "Count 5" is plainly a clerical error, given that the indictment listed only three counts and the amended judgment elsewhere refers to Counts 1, 2, and 3. We therefore remand this case to the district court with instructions to correct this portion of its judgment. *See United States v. Powell*, 354 F.3d 362, 371–72 (5th Cir. 2003); FED. R. CRIM. P. 36.

No. 16-60574

## VIII.

For these reasons, the judgment and sentence are AFFIRMED. This case is REMANDED to the district court for the limited purpose of correcting the clerical error in the judgment identified above.