# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60881

United States Court of Appeals
Fifth Circuit

**FILED**
June 1, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

MICHAEL MAES,

    Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before WIENER, STEWART, and WILLETT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

A jury convicted Michael Maes of crimes stemming from a methamphetamine distribution and money laundering conspiracy. The district court sentenced him to life imprisonment. Maes now appeals both his conviction and his sentence, challenging a number of rulings that the district court made before, during, and after trial. For the following reasons, we affirm Maes's conviction and sentence.

## I. Background

In August 2018, a nine-count Second Superseding Indictment charged Michael Maes with participating in a methamphetamine distribution and

No. 18-60881

money laundering conspiracy. The case proceeded to trial in September 2018. Maes's four co-conspirators—who had by then pleaded guilty to single-count bills of information—testified for the Government. Maes testified in his own defense. Other witnesses also testified.

The jury found Maes guilty on eight of the nine counts he faced.[1] In December 2018, the district court sentenced Maes to a within-Guidelines term of life imprisonment on counts one and two, the methamphetamine-related charges.[2] The court sentenced Maes to within-Guidelines terms of 240 months each for counts three and five through nine, the money laundering charges.[3] The court ordered the sentences to be served concurrently.

## II. Discussion

Maes raises a number of issues in this appeal. We address them individually in the same order he presents them.

### A. Fabeon Minor's testimony

Maes met Fabeon Minor while the two were housed in the same area of a Mississippi jail. Later on, Minor was housed separately from Maes in a different area of the same jail. Also housed in this different area of the jail at the same time as Minor were three of Maes's four co-conspirators: Sean Ufland, Michael Denham, and Roland Jackson.[4]

---

[1] It acquitted him on count four, a concealment money laundering charge.

[2] Count one charged him with conspiracy to possess with intent to distribute 50 grams or more of actual methamphetamine, and count two charged him with attempt to possess with intent to distribute 50 grams or more of actual methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.

[3] Count three charged him with conspiracy to commit money laundering, and counts five through nine charged him with concealment money laundering. *See* 18 U.S.C. §§ 1956(a)(1)(B)(i), (a)(2), and (h).

[4] The fourth co-conspirator was Keon Hawkins.

No. 18-60881

After the Government rested at trial, Maes made it known that he intended to call Minor as a surprise witness. Maes's counsel explained that he had just learned that Minor had overheard three of Maes's co-conspirators concocting a plan in jail to coordinate their testimony in a way that would help them and hurt Maes. During a lunch break at trial, lawyers for both sides met with Minor to hear what he had to say. Following this meeting, the Government objected to Minor's testimony on hearsay grounds. Maes's counsel argued that the testimony was admissible.

The district court decided to hear proffered testimony from Minor outside the presence of the jury. During his proffer, Minor explained that he heard Maes's three co-conspirators hatch a plan to pin methamphetamine on Maes so they could reduce their potential prison time. The district court then heard additional argument about whether Minor should be allowed to testify.

The Government reiterated its position that Minor's testimony was textbook hearsay—he would testify to what he heard the others say—that did not fit into any exception. Maes's counsel responded that the testimony was not hearsay because it was not being offered for the truth of the matter asserted and, even if it was hearsay, it nonetheless qualified for the admission against a party opponent exception. The district court recessed to consider the issue.

Returning to the bench, the district court orally explained, in great detail, its ruling on the issue. It began by recognizing that Maes's failure to timely identify Minor as a witness prejudiced the Government because it lacked time to investigate his assertions. The court then rejected Maes's arguments that the proposed testimony was not hearsay and that it qualified for the admission against a party opponent exception. Finally, it *sua sponte* considered whether a portion of Minor's testimony nevertheless qualified as an exception to hearsay under Federal Rule of Evidence 803(3) as a then-existing

3

mental, emotional, or physical condition.[5] Citing two Fifth Circuit cases, the district court explained that Minor would be allowed to testify about what he heard the trio planning. That is, he could testify that he heard them concocting a plan to coordinate their testimony and pin methamphetamine on Maes because such statements fit within the 803(3) exception. *See* FED. R. EVID. 803(3) (excepting from the hearsay rule a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan)"). Minor could not, however, testify that he heard the trio describe *why* they wanted to form the plan, because such statements did not fall within the exception. *See Bedingfield ex rel. Bedingfield v. Deen*, 487 F. App'x 219, 227 (5th Cir. 2012) (per curiam) (unpublished) ("We have explained that Rule 803(3) 'does not permit the witness to relate any of the declarant's statements as to *why* he held the particular state of mind, or what he might have believed that would have induced the state of mind.'") (quoting *United States v. Cohen*, 631 F.2d 1223, 1225 (5th Cir. 1980) (emphasis added)).

The jury returned to the courtroom to hear Minor's testimony. Maes's counsel asked Minor on direct examination "what, if anything, did you hear [Maes's three co-conspirators] say with respect to" Maes. Minor responded that they "were stating that they were going to get time cut—[,]" which clearly violated the district court's limiting instruction because it related to *why* the trio had taken this action. At this point, Maes's counsel interrupted Minor and re-stated his question as whether he heard "them say anything with respect to meth[.]" Minor responded that Denham[6] "was saying he was going to put a lot

---

[5] This is also known as the then-existing "state of mind" exception. *Moody v. Farrell*, 868 F.3d 348, 353 (5th Cir. 2017).

[6] Minor referred to Denham as Bubba, a well-known nickname of Denham's.

of ice on Michael Maes." Minor explained that "ice" was a synonym for methamphetamine.[7]

Maes now argues for the first time on appeal that the district court reversibly erred by limiting Minor's testimony because his statements as to *why* the co-conspirators had formed the alleged plan should have been admissible as extrinsic evidence of prior inconsistent statements under Federal Rule of Evidence 613(b). That is, Maes argues that Ufland, Denham, and Jackson each testified on cross-examination that they never said they intended to coordinate their testimony in an effort to reduce their sentences. And because Minor sought to testify that these statements by each co-conspirator were not true, Minor's testimony should have been admitted as extrinsic evidence to show that the three had lied.

A challenge to a district court's ruling excluding evidence is reviewed for abuse of discretion subject to the harmless error analysis if the challenge was preserved below. *United States v. Demmitt*, 706 F.3d 665, 670 (5th Cir. 2013). Unpreserved errors of the same variety are reviewed for plain error. *United States v. Johnson*, 943 F.3d 214, 221–22 (5th Cir. 2019). To be considered preserved for appeal, a defendant's objection to a district court's ruling must be "on the specific grounds" raised below. *Id.* (quoting *United States v. Warren*, 720 F.3d 321, 332 (5th Cir. 2013)).

Here, Maes argued below that Minor's testimony was admissible because it was not hearsay and, in the alternative, because it fit into the admission against a party opponent exception. He never argued that the testimony should be admissible under Rule 613(b). He therefore never "alert[ed] the district

---

[7] The Guidelines recognize "ice" as a pure form of methamphetamine that warrants special treatment when calculating a defendant's offense level for sentencing purposes. *See* U.S.S.G. § 2D1.1 n.8(D). Minor, however, seemed to use the term as a generic synonym for methamphetamine.

court to the nature of the alleged error" so as "to provide an opportunity for correction," which is required to preserve the error. *Id.* at 221 (quoting *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009). Because this case is like *United States v. Johnson*, and Maes failed to properly preserve the specific error raised on appeal, we review his Rule 613(b) challenge for plain error. *Id.* at 221–22 (holding that a defendant failed to preserve a challenge that testimony should have been excluded as an improper opinion on an ultimate issue by an expert where the defendant only challenged the testimony on relevance and speculation grounds below).

To succeed on plain error review, a defendant must show that: "(1) the district court committed an error, (2) the error is plain, (3) the error affects [the] appellant's substantial rights, and (4) failure to correct the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 222 (quoting *United States v. del Carpio Frescas*, 932 F.3d 324, 332 (5th Cir. 2019)). Maes has failed to establish any of the four necessary elements to succeed on this challenge.

Under Federal Rule of Evidence 613(b), "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." If a witness never denies making a certain statement, there can be no showing of inconsistency, and Rule 613(b) does not apply. *See United States v. Hale*, 685 F.3d 522, 539 (5th Cir. 2012). Here, none of the three co-conspirators housed with Minor denied coordinating a plan *to reduce their sentences*. Accordingly, 613(b) did not apply to Minor's proposed testimony regarding the trio's motives in coordinating testimony, and the district court did not err, let alone plainly err, by declining to admit it on those grounds.

Even if the court had plainly erred, Maes cannot show that the ruling partially excluding Minor's proposed testimony affected Maes's substantial rights. He cannot make this showing because the jury actually heard the "disallowed" testimony. In violation of the district court's order, Minor testified that the trio hatched a plan to get their prison time cut, and the district court did not instruct the jury to disregard the testimony. Compounding the problem, Maes's lawyer emphasized this disallowed-but-introduced testimony during his closing argument, saying Minor "told you . . . how they were going to put meth on [Maes] because meth is what the government needs in order for us to get our sentence reduced and get out of here." In sum, the district court's ruling did not prevent Minor from testifying as Maes desired; and Maes's lawyer emphasized this during his closing argument.

For all of these reasons, Maes has failed to show that the district court plainly erred in limiting Minor's testimony.

### B. Maes's June 22, 2016 arrest

#### 1. Cross-examination of Maes

On June 22, 2016, an officer of the Oakland Housing Authority Police Department arrested Maes after the officer found three pounds of marijuana in Maes's rental vehicle. When Maes was being cross-examined at trial, the prosecutor asked several questions about this arrest.

> Q [Prosecutor]. In 2016, in June of 2016 when you were arrested by the Oakland [Housing Authority] Police Department, you were in possession of marijuana then, weren't you?
> A [Maes]. Yes.
> Q. Three pounds of marijuana, in fact; correct?
> A. Yes.
> Q. And you were arrested for that?
> A. Yes.
> Q. Because that was illegal?

No. 18-60881

A. I'm not sure if it was like a probation thing or what
the exact situation was.

Q. You don't know what the penalty for it was, but you
know it's illegal; right?

A. That it's illegal to --

Q. In 2016 to possess three pounds of marijuana in the
State of California?

A. It's illegal to -- it's illegal to sell it. It's illegal to sell
it. I could vend it to clubs. I could vend it to businesses.
You would have -- you have to have a vending license,
but you can't just sell in the streets before 2016. As of
now, it's recreational where I could give you
marijuana. I can give my friends marijuana. But as far
as before that, yes, you're right, you needed a vending
license to vend.

MR. CROSBY [Maes's trial counsel]: I'm going to
object to questions regarding arrests without
convictions. That would be improper, and I object.

The district court overruled the objection. It ruled that Maes had opened the door to a discussion about the arrest when he testified on direct that he was a marijuana dealer and did not believe there was anything illegal about his dealings.

Maes now argues that the district court reversibly erred in overruling this objection. He cites Federal Rule of Evidence 608(b) to support this argument. We review preserved errors of this type for abuse of discretion subject to a harmless error analysis.[8] *See United States v. Dillon*, 532 F.3d 379, 387 (5th Cir. 2008).

Federal Rule of Evidence 608(b) provides:

Except for a criminal conviction under Rule 609,

---

[8] The Government argues that plain error review should apply because Maes's arrest was briefly mentioned earlier in the trial, and Maes's counsel failed to object at that time. We disagree. Maes's counsel raised the precise error below when the arrest was fully discussed, and this objection was "sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *Johnson*, 943 F.3d at 221 (quoting *Neal*, 578 F.3d at 272).

No. 18-60881

extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:

(1) the witness; or
(2) another witness whose character the witness being cross-examined has testified about.

On direct examination, Maes was asked: "You're not trying to say that because [marijuana is] legal in California it makes it legal here, you're not trying to make that argument, are you?" Maes answered: "I'm not trying to dispute that." Additionally, Maes testified at length about his experiences growing and selling marijuana in California.

The district court did not abuse its discretion by allowing the prosecutor to ask a few pointed questions about Maes's arrest for possessing marijuana in California when he had essentially testified that he believed his dealings in California were entirely legal. *See United States v. Ebron*, 683 F.3d 105, 154 (5th Cir. 2012) (holding that the district court did not abuse its discretion in allowing the Government to inquire on redirect about a specific instance of prior conduct when on cross the defendant had opened the door to the issue). Regardless, any error would have been harmless. The thrust of Maes's defense at trial was that he dealt exclusively in marijuana, not methamphetamine. To the extent these questions focused the jury's attention on Maes's arrest for marijuana possession, it did not seriously prejudice him. Accordingly, any error in allowing this testimony did not affect his substantial rights, and it therefore would have been harmless.

### 2. Limiting instruction

Maes further argues that the district court compounded its error in allowing the Government to cross-examine him about the arrest when the

9

court failed to immediately issue a limiting instruction explaining that the arrest could only be applied to his credibility, not his culpability. "Where, as here, the defendant did not request a limiting instruction at trial, we review challenges to the sufficiency of a limiting instruction for plain error." *United States v. Delgado*, 401 F.3d 290, 299 (5th Cir. 2005). "Plain error appears only when the impeaching testimony is extremely damaging, the need for the instruction is obvious, and the failure to give it is so prejudicial as to affect the substantial rights of the accused." *United States v. Sisto*, 534 F.2d 616, 623 (5th Cir. 1976) (quoting *United States v. Garcia*, 530 F.2d 650, 656 (5th Cir. 1976)).

Here, the "impeaching" testimony detailing Maes's arrest for marijuana possession was not extremely damaging; the need for the limiting instruction was not obvious; and the failure to give one did not affect Maes's substantial rights. It was not damaging because it simply reinforced Maes's assertions that he was in the marijuana business. The need for the instruction was not obvious because of—in the district court's words—"the nature of [Maes's] direct testimony[.]"[9] And it did not affect Maes's substantial rights for two reasons. First, the court actually did *sua sponte* issue a limiting instruction after Ufland finished testifying earlier in the trial. At that time, the court stated:

> Also, you've heard some testimony and references to the fact that Mr. Maes may have sold marijuana or may have been a marijuana dealer. He is not charged with being a marijuana dealer. So the fact that he may or may not have been a dealer of marijuana is not evidence that he is guilty of the crime charged, or the crimes charged in this case, and you may not arrive at a guilty verdict by relying on the fact that he may have sold marijuana or been a marijuana dealer. All right?

---

[9] In other words, because Maes's testimony in defense to the methamphetamine charges was, in part, that he was a marijuana dealer—a largely irrelevant fact—the need for a limiting instruction on the marijuana arrest discussion was not obvious.

No. 18-60881

Please keep those rules in mind.

Second, and more importantly—in the context of this multi-day trial—a few questions about Maes's arrest for marijuana possession were not likely to prejudice him in any meaningful way. To the extent the stop that led to the arrest came up at other points during the trial, those mentions were for the entirely relevant purpose of discussing a postal receipt found in Maes's backpack during a search of the vehicle. Denham testified that he had texted Maes an address in Slidell, Louisiana several days earlier so Maes could send a shipment of methamphetamine to the address. It was the same address that appeared on the postal receipt. The package was delivered.

For all of these reasons, the court did not plainly err by failing to immediately issue a limiting instruction about Maes's arrest during his cross-examination.

### C. Shackles

Before jury selection began, the district court explained in detail why it was ordering Maes to remain in leg shackles throughout trial. Maes argues that this decision was unjustified and that it amounts to a violation of his constitutional rights.

When a district court articulates specific reasons for ordering a defendant to remain shackled during trial, we review that decision for abuse of discretion.[10] *United States v. Banegas*, 600 F.3d 342, 346 (5th Cir. 2010) (citing *Deck v. Missouri*, 544 U.S. 622, 629 (2005)). "[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck*, 544 U.S. at 629.

---

[10] Maes argues that a stricter standard of review—applicable when a district court fails to articulate specific reasons for shackling—should apply here. Because the district court did articulate specific reasons for the shackling order, Maes's argument is without merit.

The Supreme Court in *Deck v. Missouri* explained that district courts "may of course take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial." *Id.* Additionally, this court has held that district courts "may rely heavily on the U.S. Marshal's advice when deciding whether defendants should be shackled during trial." *United States v. Fields*, 483 F.3d 313, 357 (5th Cir. 2007) (quoting *United States v. Ellender*, 947 F.2d 748, 760 (5th Cir. 1991)).

This court recently held that a district court did not abuse its discretion by ordering a defendant to remain shackled during trial where nothing suggested the shackles were visible to the jury and particularized needs justified the shackling. *United States v. Ayelotan*, 917 F.3d 394, 401 (5th Cir. 2019). The same is true here. Maes does not argue that the shackles ever became visible to the jury. And the district court offered detailed reasons for its shackling order: (1) Maes was a fugitive until he was arrested; (2) he had a history of failing to appear in court; (3) he faced and indeed received a lengthy sentence; and (4) most importantly, the Marshals believed that Maes presented a security risk and a flight risk. The district court was entitled to rely on this recommendation and on the other aforementioned reasons it cited for its order. It did not abuse its discretion.

### D. Sentencing

In calculating Maes's Guidelines range and recommending a sentence, the presentence investigation report ("PSR") was exhaustive. It describes in detail the numerous meetings, communications, and transactions among Maes and his co-conspirators that formed the basis of his offense conduct. Ultimately, the PSR attributed more than 10 kilograms of methamphetamine to Maes. Under the drug conversion table, the total "converted drug weight" applicable to Maes was 250,469 kilograms of methamphetamine. *See* U.S.S.G. § 2D1.1 n.8(D) (providing that 1 gram of either actual methamphetamine or

"ice" should be converted to 20 kilograms of the substance). Section 2D1.1(c)(1) of the Guidelines provides that a converted drug weight of more than 90,000 kilograms results in a Base Offense Level of 38. The PSR thus began its calculation of Maes's total offense level at 38.

Next came a series of enhancements. Two points were added because the methamphetamine was more likely than not imported from another country. *See* U.S.S.G. § 2D1.1(b)(5). Two more points because of his money laundering convictions. *See id.* § 2S1.1(b)(2)(B). Four points because of his role as a leader in the conspiracy. *See id.* § 3B1.1(a). And finally two more points under the obstruction enhancement on the ground that Maes perjured himself when testifying in his own defense. *See id.* § 3C1.1. This brought his total offense level to 48. Under the Guidelines, an "offense level of more than 43 is to be treated as an offense level of 43." *Id.* § 5, pt. A n.2. Thus, his total offense level for Guidelines calculation purposes was 43.

Because the PSR placed Maes in a criminal history category of IV, his Guidelines range for his convictions on counts one and two was life imprisonment. *Id.* § 5, pt. A. The range on his money laundering convictions was 240 months per count. *Id.* Maes did not object to the PSR in the district court. Nevertheless, at sentencing, Maes's lawyer argued that his client should not be sentenced to life. The district court characterized these arguments as a request for a downward variance.[11] It then carefully applied the applicable sentencing factors provided by Section 3553(a) of Title 18 of the United States Code. After doing so, it denied Maes's request for a downward variance. It then sentenced him to life imprisonment.

---

[11] The district court noted, however, that to the extent Maes's request constituted a request for a downward departure, the Guidelines did not authorize one under the facts of Maes's case. Even if they did, the court held that it would not exercise its discretion to depart from the Guidelines.

No. 18-60881

Maes argues on appeal that his life sentence is both procedurally and substantively unreasonable. We address each challenge.

### 1. Procedural challenges

We review unpreserved procedural sentencing errors for plain error. *United States v. Sanchez-Hernandez*, 931 F.3d 408, 410 (5th Cir. 2019). Maes raises three procedural objections for the first time in this appeal. First, he argues that the PSR wrongly attributed certain amounts of methamphetamine to him; this caused the district court to err in calculating Maes's base offense level; and it therefore miscalculated the total Guidelines range for Maes's sentence. Second, he argues that the record does not support application of the two-point obstruction enhancement. And third, he argues that the record does not support the four-point leader enhancement. We address each objection.

#### i. Base offense level

Maes's challenge to the calculation of his base level is inadequately briefed and therefore forfeited. *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 489 n.1 (5th Cir. 2018) (noting that failure to adequately brief an argument forfeits the claim on appeal); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim."). Maes devoted less than three pages to what should have been an exceptionally complex argument, largely failing to cite to the record throughout. *See United States v. Rojas*, 812 F.3d 335 382, 407 n.15 (5th Cir. 2016) (noting that a failure to include record citations to support an argument results in the argument being inadequately briefed); *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (holding that inadequately briefed arguments are deemed waived on appeal). His counsel failed to cure this inadequate briefing at oral argument.

Maes failed to develop the challenge to his base offense level to even a minimum threshold such that we could identify his fundamental contentions.

No. 18-60881

His failure to include record citations when the underlying trial spanned multiple days and numerous witnesses further bolsters the conclusion that this challenge is forfeited because of inadequate briefing.[12]

### ii. Obstruction enhancement

A two-level obstruction enhancement applies if:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and
>
> (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense . . . .

U.S.S.G. § 3C1.1. "Perjury falls within the scope of § 3C1.1 when a defendant provides false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Johnson*, 880 F.3d 226, 233 (5th Cir. 2018) (internal quotation marks omitted).

The record supports the district court's conclusion that Maes falsely testified about a material matter with the willful intent to do so when he testified that he never sent methamphetamine to anyone and it was his girlfriend—not him—who controlled and used his telephone to conduct the narcotics transactions with his co-conspirators. Multiple eyewitnesses directly contradicted this statement, testifying that it was Maes himself who conducted the narcotics transactions and sent the methamphetamine. There is no

---

[12] In an abundance of caution, we note additionally that Maes has failed to show that plain error—or any error—occurred in the calculation of his base offense level. The PSR properly identified the amount of methamphetamine attributed to Maes, accurately applied the drug conversion table to that amount, and correctly determined a base offense level from these calculations. Maes makes no coherent argument to the contrary. Further, the district court summarized this conduct when outlining the reasons for Maes's sentence that stemmed from this base offense level.

indication that Maes's testimony resulted from "confusion, mistake, or faulty memory." *United States v. Johnson*, 880 F.3d 226, 233 (5th Cir. 2018) (quoting *United States v. Smith*, 804 F.3d 724, 737 (5th Cir. 2015)). Instead, the record shows that Maes intentionally made a false statement in order to "get out of the charges." *Id.* The district court did not plainly err in applying the enhancement.

### iii. Leader enhancement

The four-point leader enhancement applies when the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive . . . ." U.S.S.G. § 3B1.1. The factors a court must consider in determining whether a defendant is a leader for purposes of the enhancement include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Ayelotan*, 917 F.3d at 406 (cleaned up) (citing U.S.S.G. § 3B1.1 cmt. 4). A district court may apply the enhancement even if there is more than one "leader" of the criminal activity. *Id.*

Here, Maes has failed to show that the district court plainly erred in applying this enhancement. As the district court carefully articulated:

> In this case, Mr. Maes did exercise decision-making authority in terms of he controlled the supply of the methamphetamine and determined when it could be shipped. He organized and participated in the sense that he was obtaining the methamphetamine, packaging it, shipping it, and was also sending bank account information in order for deposits to be made to pay for this activity. He recruited other individuals to supply this bank information to him in some instances

> so he could use other accounts to try and hide some of the activity. And this was the subject of the money laundering counts, but it was all connected to the drug conspiracy and the shipment of the drugs. He was receiving large sums of money for these shipments of methamphetamine. And the nature and scope of the illegal activity, it was broad, it was surreptitious and designed to conceal. There were several layers that were used to conceal the activity, and it went on for a period of time.
>
> So I think when I look at the record here and evaluate all the factors, certainly by a preponderance of the evidence, they support the conclusion that the four-level enhancement is appropriate.

We agree with the district court's trenchant analysis and affirm because its analysis is supported by the record. Maes failed to demonstrate that the court's analysis was based on an erroneous view of the record or application of the law. We therefore hold that Maes has failed to show that the district court plainly erred in calculating his Guidelines range.

### 2. Substantive challenge

Maes also argues that his sentence is substantively unreasonable because the district court erred in denying his request for a downward variance. His primary complaint is that he received a sentence much harsher than those of his co-conspirators. We review the substantive reasonableness of the district court's sentence for abuse of discretion. *United States v. Gordon*, 838 F.3d 597, 601 (5th Cir. 2016) (citing *United States v. Groce*, 784 F.3d 291, 294 (5th Cir. 2015)).

A district court must consider certain factors under 18 U.S.C. § 3553(a) when determining what sentence to impose on a defendant. One of the seven factors is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6). If the court considers all the factors and imposes a

17

within-Guidelines sentence on a defendant, the sentence is presumed reasonable. *Ayelotan*, 917 F.3d at 408. To rebut the presumption, a defendant must show: "(1) the court failed to consider a factor that it should've given significant weight; (2) the court gave significant weight to an irrelevant or improper factor; or (3) the court clearly erred in balancing sentencing factors." *Id.* at 409.

Here, the district court appropriately considered the § 3553(a) factors when determining Maes's within-Guidelines sentence. His sentence is therefore presumptively reasonable.[13] Additionally, the fact that Maes's co-conspirators ultimately received lower sentences than he did does not mean that the disparity is "unwarranted."[14] They each pleaded guilty to single-count bills of information and then testified against Maes at trial. Maes went to trial and maintained his innocence throughout and at sentencing. He therefore forfeited benefits that his co-conspirators received. In sum, Maes has failed to show that the district court abused its discretion in sentencing him to life.

### E. Count nine concealment money laundering conviction

Count nine of the Second Superseding Indictment charged Maes with concealment money laundering in violation of Section 1956(a)(1)(B)(i) of Title 18 of the United States Code. More specifically, it charged him with causing $4,700 of conspiracy proceeds to be deposited into a Wells Fargo bank branch in Gulfport, Mississippi on February 23, 2017 only to have $4,600 withdrawn from the same account at a Wells Fargo bank branch in California the next day. In a one-paragraph argument, Maes contends that the evidence introduced at trial was insufficient to support this conviction.

---

[13] Although Maes argues that this presumption should not apply, he has failed to show that the district court improperly applied the § 3553(a) sentencing factors.

[14] The sentences were: 240 months for Jackson and Hawkins; 235 months for Denham; and 114 months for Ufland.

No. 18-60881

We review preserved sufficiency challenges de novo, looking at "whether, considering the evidence and all reasonable inferences in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Danhach*, 815 F.3d 228, 235 (5th Cir. 2016) (quoting *United States v. Vargas-Ocampo*, 747 F.3d 299, 303 (5th Cir. 2014) (en banc)). To convict Maes of money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), the Government must have proved beyond a reasonable doubt that Maes: (1) conducted or attempted to conduct the February 2017 transaction; (2) that the transaction involved proceeds of the methamphetamine conspiracy; (3) that Maes knew the money constituted proceeds of the methamphetamine conspiracy; and (4) that Maes intended for the transaction to promote the carrying on of the methamphetamine conspiracy. *See* Pattern Crim. Jury Instr. 5th Cir. 2.76A Laundering Monetary Instruments—Proceeds of Unlawful Activity (2015); 18 U.S.C. § 1956(a)(1)(B)(i).

The record evidence that supports this charge is as follows: (1) Jackson's testimony that he received methamphetamine from Maes even after his co-conspirators were arrested in August 2016; (2) Jackson's testimony that Maes sent him bank account numbers that Jackson shared with his girlfriend, Amanda Turner; (3) Jackson's testimony that one of those bank account numbers belonged to Jasmin Chavez, who was a friend of Maes's girlfriend; (4) bank records showing that $4,700 was deposited into Chavez's account at a Wells Fargo bank branch in Gulfport—the same bank branch location used for other transactions in the conspiracy—on February 23, 2017; and (5) bank records showing that $4,600 was withdrawn from the account at a Wells Fargo bank branch in California the next day.

Based on the record, a rational trier of fact could have convicted Maes on count nine. Evidence showed that he gave Chavez's name and bank account

19

information to Jackson, that Jackson shared this information with Turner, and that she would deposit money into accounts for Jackson. The holes Maes now emphasizes in this evidence—*e.g.*, that Chavez never testified to substantiate Jackson's and Turner's testimony, and that Turner could not have facilitated this transaction because she only took direction from Jackson, who had been arrested before it took place—could have been emphasized to the jury. On this record, a rational trier of fact could have convicted him on this count.

### F. Cumulative error

In summation, Maes argues that his conviction must be vacated because of the prejudice caused by the combination—"cumulative error"—of potentially non-reversible errors he raises on appeal.

The cumulative error doctrine provides that an aggregation of non-reversible errors can result in the denial of a constitutionally fair trial. *United States v. Delgado*, 672 F.3d 320, 344 (5th Cir. 2012) (en banc). But "[t]he doctrine justifies reversal only in the unusual case in which synergistic or repetitive error violates the defendant's constitutional right to a fair trial." *Id.*

Maes has failed to show that the district court committed synergistic or repetitive error. In fact, Maes has failed to show that the district court erred in any respect. Maes is not entitled to relief under the cumulative error doctrine.

## III. Conclusion

For the foregoing reasons, we hold that Maes has failed to show that the district court reversibly erred in any respect. We therefore AFFIRM his conviction and life sentence.