# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60688

United States Court of Appeals
Fifth Circuit

**FILED**

October 23, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CALVIN LOUIS SMITH,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before BENAVIDES, CLEMENT, and HIGGINSON, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

Calvin Louis Smith ("Defendant") appeals his jury trial conviction for soliciting or accepting a bribe in violation of 18 U.S.C. § 666(a)(1)(B). Defendant served as an alderman for the City of Canton, Mississippi, and the jury found that he agreed to accept several thousand dollars in exchange for influencing the award of a city ditch-spraying contract in 2012. Defendant argues on appeal that the evidence at trial was insufficient to support a finding that the City of Canton received over $10,000 in federal funds as required to satisfy a statutory element of the offense. Defendant also challenges a number of the district court's evidentiary rulings, and he objects to the imposition of a two-level sentencing enhancement for obstruction of justice based on his alleged

No. 14-60688

perjury at trial. For the reasons set forth below, we AFFIRM the conviction and sentence.

## I. Background

In 2012, Defendant held the elected position of alderman in Canton, Mississippi. During the spring of that year, Michael Bouldin approached Defendant for help in obtaining a city contract to spray vegetation in a ditch. Bouldin had already partnered with another local business to bid on the project, and he testified that Defendant asked for $3,000 of the bid money in order to steer the contract to Bouldin. Bouldin discussed this proposition with his partner, but the partner refused to become involved in bribery. Bouldin then contacted the FBI and agreed to cooperate with them.

At the FBI's request, Bouldin wore audio and video recording devices during subsequent meetings with Defendant. Bouldin informed Defendant that his partner was not willing to pay for the contract, but he offered to give Defendant $3,000 from his own money in exchange for Defendant's help. Defendant agreed to this arrangement, and he was recorded on audio and video accepting $1,500 from Bouldin at a later meeting between the two men. After receiving the ditch-spraying contract and completing the project, Bouldin met with Defendant again to pay him the remaining $1,500, but Defendant refused to take the money and instructed him to give it to a third party.

Defendant was subsequently arrested and indicted on a single count of soliciting or accepting a bribe in violation of 18 U.S.C. § 666(a)(1)(B). He was convicted following a jury trial and was sentenced to 66 months of imprisonment, a $1,000 fine, two years of supervised release, forfeiture of the $1,500, and a $100 special assessment. He filed a timely notice of appeal.

## II. Discussion

*A. Admissibility of the City Revenue Ledger*

No. 14-60688

Among other things, 18 U.S.C. § 666 makes it a crime for an agent of a local government, organization, or agency to solicit or accept a bribe if the relevant entity "receives, in any one year period, benefits in excess of $10,000 under a Federal program." *See* 18 U.S.C. § 666(a)-(b). Thus, in order to make its case against Defendant, the Government was required to prove that the City of Canton received more than $10,000 in federal funds during a twelve-month period encompassing the charged conduct. *Id.* § 666(d)(5). The Government sought to prove this element of the offense by introducing a ledger of city revenues through the testimony of Canton City Clerk Valerie Smith ("Ms. Smith"). The district court permitted the ledger to be admitted as a business record under Federal Rule of Evidence 803(6), but Defendant now argues that the ledger lacked the requisite "trustworthiness" to be treated as a business record. Defendant also argues that the ledger was inadmissible because it was not the "best evidence" of the underlying transactions.

We review the district court's evidentiary rulings for abuse of discretion, asking whether the court below relied on an "erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Jackson*, 636 F.3d 687, 692 (5th Cir. 2011) (quoting *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008)). We conclude that the district court did not abuse its discretion in admitting the ledger of city revenues.

1. Trustworthiness Under Rule 803(6)

At the time of trial, Federal Rule of Evidence 803(6) provided that a record of a regularly conducted activity would not be excluded by the rule against hearsay if:

(A) the record was made at or near the time [of the acts or events recorded] by--or from information transmitted by--someone with knowledge;

3

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

FED. R. EVID. 803(6) (2014). Defendant appears to concede on appeal that the city's revenue ledger meets subsections (A) through (D) of Rule 803(6). However, Defendant argues the ledger lacks trustworthiness under subsection (E) because Ms. Smith, who personally made the entries in the ledger, acknowledged at trial that (1) she did not "go back" in city records to verify underlying documentation, and (2) she was unaware that some ostensibly federal funds could have come from non-federal sources. In Defendant's view, this testimony indicated that Ms. Smith categorized funds as federal in the ledger "based upon the source of the check and not the source of the funds," rendering the ledger untrustworthy and inadmissible under Rule 803(6).

We reject this argument. We have explained that the district court "has great latitude on the issue of trustworthiness," *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990), and the burden of establishing that a piece of evidence lacks trustworthiness is on its opponent. *Graef v. Chemical Leaman Corp.,* 106 F.3d 112, 118 (5th Cir. 1997). In this regard, "[t]here is no requirement that the witness who lays the foundation" for admission of a business record "be able to personally attest to its accuracy." *Duncan*, 919 F.2d at 986. In fact, "courts should not focus on questions regarding the accuracy" of a record in making the trustworthiness determination required by Rule 803,

because the jury is responsible for assessing credibility and deciding what weight to afford admitted evidence. *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1307 (5th Cir. 1991).

This court has thus repeatedly recognized that a challenge to the accuracy or completeness of a record goes to its weight, not its admissibility. *See, e.g.*, *United States v. Tafoya,* 757 F.2d 1522, 1528–29 (5th Cir. 1985); *Matador Drilling Co., Inc. v. Post,* 662 F.2d 1190, 1199 (5th Cir. 1981); *Crompton-Richmond Co., Inc. Factors v. Briggs,* 560 F.2d 1195, 1202 n.12 (5th Cir. 1977). Because Defendant essentially challenges the accuracy of the city ledger, his argument goes only to its weight, and he has not shown that the district court abused its discretion by admitting the ledger under Rule 803(6).

2. The Original Writing Rule

Defendant also asserts that the revenue ledger entries were inadmissible under Federal Rule of Evidence 1002, because the Government should have proffered "supporting documentation" to prove the amount of federal funds received by the city in 2012. An examination of Rule 1002's scope, however, reveals that it has no application in this case. The rule applies when a litigant seeks to "prove the content" of a writing, recording, or photograph. *See* FED. R. EVID. 1002; *United States v. McNealy*, 625 F.3d 858, 867 (5th Cir. 2010). In such a circumstance, an original copy of the writing or record is favored over secondary evidence of its content. *Id.* It is well-established that Rule 1002 does not apply in situations where the mere existence of an independent factual condition is sought to be proved, even if the condition is contained in or effectuated through a writing.[1] *See* FED. R. EVID. 1002 advisory committee's

---

[1] In other cases, we have considered seven factors in "distinguishing between whether it is the content of the document or merely its existence that a witness intends to testify concerning," including the "importance of content in the case" and the "presence or absence of an actual dispute as to content." *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 218–19 (5th Cir. 2005). The present case, however, does not warrant consideration of these

note ("[A]n event may be proved by nondocumentary evidence, even though a written record of it was made. . . . For example, payment may be proved without producing the written receipt which was given. Earnings may be proved without producing books of account in which they are entered."); *Dalton v. FDIC*, 987 F.2d 1216, 1223 (5th Cir. 1993) (concluding the rule did not apply to proof of a debt through an affidavit rather than bank documentation); *see also United States v. Sliker*, 751 F.2d 477, 483 (2d Cir. 1984) (recognizing that production of a written insurance policy was unnecessary to prove the existence of the policy, because "the proof required was proof of the fact of insurance and not of the contents of a writing").

In the present case, Ms. Smith testified that she personally received the disputed federal grant money in 2012 and recorded it in the city's revenue ledger. The ledger entries were thus not offered through her testimony to "prove the contents" of any writing or supporting documentation—rather, supporting documentation would itself, if offered, act only as evidence of the receipt of money from the federal government. Put another way, the Government used the city's revenue ledger to prove the existence of tangible representations of money and their delivery to the person who made the ledger, not to prove the terms of underlying documents reflecting payments.[2] Federal

---

factors, because the ledger entries were not offered to prove the existence *or* content of a document.

[2] The Eleventh Circuit has also rejected a Rule 1002 argument under similar circumstances. In *United States v. Castro*, the Government sought to establish that Metropolitan Dade County received federal grants in excess of $10,000 under § 666 by proffering the testimony of the Dade County Finance Department's assistant controller. 89 F. 3d 1443, 1454 (11th Cir. 1996). On appeal, the defendant argued that such testimony violated Rule 1002, because the Government should have instead relied on a "composite exhibit" detailing Dade County's receipt of federal funds. The court disagreed; it noted that the assistant controller had personal knowledge because his department was responsible for receiving the funds, and it concluded that his testimony did not seek to "elicit the 'contents' of" the unadmitted composite exhibit. *Id.* at 1455. In the present case, Ms. Smith testified about Canton's receipt of funds based on her personal knowledge, and the Government *also* proffered a "composite exhibit" (the ledger) that Ms. Smith made as a reflection of that

No. 14-60688

Rule of Evidence 1002 thus has no bearing, and we conclude that the district court did not err in admitting the revenue ledger.

*B. Sufficiency Challenge*

Federal Rule of Criminal Procedure 29(a) provides that, on motion and before submission to the jury, a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). At the close of the Government's case—and again at the close of all evidence—Defendant moved for a judgment of acquittal pursuant to Rule 29; he argued the Government had failed to establish that the City of Canton received over $10,000 in federal funds in 2012 as required for conviction under 18 U.S.C. § 666. The district court denied Defendant's motions, concluding there was sufficient evidence to send the question to the jury. Defendant's primary contention on appeal is that the district court erred in denying his initial Rule 29 motion; he reiterates that the city's ledger was inadmissible and claims that Ms. Smith's testimony was insufficient, on its own, to sustain a conviction.[3]

We review the denial of a Rule 29 motion de novo. *United States v. Xu,* 599 F.3d 452, 453 (5th Cir. 2010). "The jury's verdict will be affirmed 'if a reasonable trier of fact could conclude from the evidence that the elements of

---

personal knowledge. Defendant's assertion that the Government should have come forward with some additional documentation is therefore unfounded—the Government was not required to produce "each and every piece of paper" that evinced payments. *Dalton,* 987 F.2d at 1223.

[3] At trial, the Government also presented the testimony of Stanford Beasley, the executive director of the Canton Housing Authority. Mr. Beasley testified that the housing authority received more than $10,000 from the federal government in 2012. Defendant argues that this evidence was likewise insufficient because cross-examination of Mr. Beasley established that the local housing authority is a separate entity from the city. However, the district court specifically indicated that its denial of the first Rule 29 motion was not based on Mr. Beasley's testimony. It later found that the funds received by the Canton Housing Authority did not establish that the city had received more than $10,000, granted a defense motion to instruct the jury not to consider those funds, and removed exhibits pertaining to the housing authority. Thus, Mr. Beasley's testimony is irrelevant to the issue on appeal.

the offense were established beyond a reasonable doubt.'" *United States v. Girod,* 646 F.3d 304, 313 (5th Cir. 2011) (quoting *United States v. Myers*, 104 F.3d 76, 78 (5th Cir. 1997)). "[W]e do not evaluate the weight of the evidence or the credibility of the witnesses, but view the evidence in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict." *Id.* Furthermore, because Defendant renewed his motion for judgment of acquittal at the close of evidence, "the 'waiver doctrine' requires [this] court to examine all the evidence rather than to restrict its examination to the evidence presented in the Government's case-in-chief." *United States v. White,* 611 F.2d 531, 536 (5th Cir. 1980). Although Defendant's argument on appeal focuses on the denial of his initial Rule 29 motion, we accordingly consider both the Government's evidence and the evidence adduced by Defendant after his initial Rule 29 motion was denied.

For the reasons already discussed, the district court did not abuse its discretion in admitting the city's revenue ledger. Even assuming that the ledger was inadmissible, however, the other evidence was sufficient to support a finding beyond a reasonable doubt that Canton received over $10,000 in federal funds in 2012. At trial, the Government relied on the testimony of Ms. Smith to establish that Canton received several large grants from federal agencies. In particular, Ms. Smith testified that among other amounts, the city received (1) a $66,256.74 grant from the Department of Justice for the period between March and September of 2012, and (2) a $22,791 "Mississippi Victims of Crime" or "VOCA" grant for the period between October 1, 2011, and June 30, 2012. Defendant cross-examined Ms. Smith about these payments, prompting her to concede that she did not "go back and verify" documents pertaining to particular funds. Ms. Smith also acknowledged that she was unaware some funds in the VOCA grant could actually have come from public (i.e., non-federal) donations, and she eventually agreed that she "had no way

of knowing" how much of the VOCA grant consisted of federal funds other than what "somebody else said."

Based on this exchange, Defendant argues that Ms. Smith's testimony was insufficient to support a finding beyond a reasonable doubt that the Government established the federal funds element of 18 U.S.C. § 666. Specifically, Defendant relies on this court's decisions in *United States v. Jackson* and *United States v. Brown* for the proposition that uncorroborated testimony cannot establish the federal funds element if such testimony is challenged on cross-examination.

In *United States v. Jackson*, the Government attempted to prove that the City of Monroe received over $10,000 in federal funds through the testimony of the city's director of administration. 313 F.3d 231, 234 (5th Cir. 2002). The director testified about certain grants received from the National Endowment for the Humanities ("NEH") between 2008 and 2009. *Id.* This testimony was contradicted, however, both by conflicting testimony and documentary evidence suggesting that at least some of the funds had actually come from state or local agencies rather than the NEH. *Id.* at 234–35. Given this competing evidence, we determined that while the record supported an inference that the city received at least some funding indirectly from federal sources, it was unclear how much it received and when. *Id.* at 236. Accordingly, we concluded there was insufficient evidence to support a finding that the city received over $10,000 during the relevant twelve-month period. *Id.* at 238.

In *United States v. Brown*, by contrast, this court determined that sparse testimony was sufficient to support a finding that the federal funds element had been established. 727 F.3d 329, 333 (5th Cir. 2013). The Government's evidence in *Brown* consisted solely of testimony from a city accounting manager, who stated in general terms that the city received more than $10,000 during the pertinent time periods. *Id.* at 336. Recognizing that *United States*

*v. Jackson* was the "closest case on point," we distinguished *Jackson* by indicating that the accounting manager's testimony did not engender the same "uncertainty" that existed in *Jackson*. *Id.* We found it significant that while the testimony was brief, the defendants "did not cross-examine [the accounting manager] on [the federal funds issue] or offer evidence or argument rebutting it or calling it into question." *Id.* Thus, while we noted that it would generally be "best practice for the government to provide documentary evidence to corroborate that the amount of federal funds received satisfied the $10,000 threshold," such evidence was not necessary to support a finding that the federal funds element had been satisfied. *Id.* at 337 & n.1.

Defendant essentially asks us to conclude that the Government's evidence in this case more closely resembles the evidence we found insufficient in *Jackson* than the evidence we found sufficient in *Brown*. He points out that as in *Jackson*, the Government failed to produce documentary or testimonial evidence from the federal agencies that allegedly sent funds to Canton, and unlike the defendant in *Brown*, Defendant cross-examined Ms. Smith in order to "call[] [her testimony] into question." We believe that *Brown* directly informs our decision, and *Jackson* is inapposite. While Defendant is correct to identify that he cross-examined the Government's primary witness on the federal funds element, the *nature* of Defendant's questioning is significant. On cross-examination of Ms. Smith, Defendant prompted her to concede that she was unaware certain funds in the VOCA grant could have come from non-federal donations. For this reason, Ms. Smith was also compelled to agree that her denomination of the VOCA funds as "federal" could have been inaccurate. But notably, Defendant did not call into question Ms. Smith's personal knowledge with respect to the $66,256.74 grant from the Department of Justice. Rather, Defendant simply elicited her acknowledgment that she generally had not "go[ne] back" to verify the amounts in the revenue ledger. This concession,

however, did nothing to undercut Ms. Smith's testimony that she personally recalled receiving over $66,000 in funds from the Department of Justice. Thus, because defense counsel failed to rebut or call into question Ms. Smith's personal knowledge about that independently sufficient support for the federal funds element, any similarities to *Jackson* that cross-examination might otherwise have created are significantly undercut.

This court is also not faced with the uncertainty we encountered in *Jackson* as to how much of the funding came from federal sources; here, as in *Brown*, the witness was able to testify "without equivocation" that the city received at least $66,000 in federal funds in 2012. And unlike in *Jackson*, Defendant did not produce any conflicting evidence to indicate that the funds came from other than federal sources. Moreover, given Ms. Smith's unchallenged testimony, *Brown* indicates that the Government was not required to produce supporting documentary evidence from the federal agencies involved, although to do so would certainly have been "best practice." We accordingly conclude that under *Brown*, Ms. Smith's testimony alone was sufficient to support a finding that the federal funds element was met.

Of course, the Government offered more than Ms. Smith's testimony; it also offered the revenue ledger, which we have already concluded was properly admitted. Additionally, because the "waiver doctrine" impels us to consider all the evidence adduced at trial, rather than the Government's alone, we note that Defendant himself admitted during his testimony that Canton received over $10,000 in federal funds in 2012.[4] While Defendant's admission is not necessary to our holding, it does give us further reason to conclude that the

---

[4] Defendant was specifically asked, "Did the City back in 2012 receive federal funds in excess of $10,000?" He responded, "[y]es, sir." Counsel for the Government then gave Defendant a chance to clarify or equivocate by following the initial question with, "[y]ou don't contest that, do you, Mr. Smith?" Defendant simply answered, "[n]o, sir."

evidence in this case was sufficient to support a finding beyond a reasonable doubt that Canton received over $10,000 in federal funds during a twelve-month period encompassing the charged conduct. The district court thus did not err in denying Defendant's Rule 29 motions.

*C. Motion for New Trial*

Shortly before sentencing, Defendant again moved for a judgment of acquittal or, alternatively, a new trial. He argued that the district court had erred by denying his earlier motions for a judgment of acquittal, and he repeated his assertion that the Government had failed to present sufficient evidence to support the federal funds element of the offense. The district court denied the motion for new trial. Defendant claims on appeal that this was error, arguing that the district court failed to issue a clear ruling and that the motion should have been granted because the district court erroneously denied his Rule 29 motions.

A new trial may be granted in the interest of justice. FED. R. CRIM. P. 33(a). The denial of a motion for new trial is reviewed for abuse of discretion. *United States v. Franklin,* 561 F.3d 398, 405 (5th Cir. 2009). "Generally, motions for new trial are disfavored and must be reviewed with great caution." *United States v. Piazza,* 647 F.3d 559, 565 (5th Cir. 2011).

Although Defendant asserts that the district court did not clearly explain its ruling, he admits that "[i]t appears from the record that the district court denied the motion." In addition, he provides no authority in support of his contention that the district court's explanation for its ruling was insufficient. Defendant also acknowledges that his argument on the motion for new trial is based on his assertion that the district court erred in denying his motion for a judgment of acquittal. For the reasons discussed above, the district court did not err in denying the motion for a judgment of acquittal; therefore, Defendant

has not shown that the district court abused its discretion by denying his motion for a new trial. *See Franklin,* 561 F.3d at 405.

### D. *Rule 404(b) Evidence*

Defendant next argues that the district court erred in admitting evidence of an additional, uncharged bribe under Federal Rule of Evidence 404(b). To prove that Defendant solicited or accepted a bribe in violation of 18 U.S.C. § 666(b), the Government relied on recordings and testimony from Michael Bouldin, the recipient of the ditch-spraying contract for which Defendant was paid bribe money. Bouldin's testimony and recordings reflected that during conversations about the bribe for the ditch-spraying contract, Defendant and Bouldin also discussed a local auto dealership that wished to purchase adjacent land in order to expand. On one occasion, Defendant asked Bouldin "how much" it would be "worth" to the auto dealership to acquire the land, and the two eventually agreed that Defendant would receive $2,000 in exchange for his influence in the land acquisition deal.

Defendant filed a motion in limine to exclude the above evidence pursuant to Federal Rule of Evidence 404(b), but after hearing Bouldin's testimony and arguments from the attorneys, the district court denied the motion. The court determined that the evidence was admissible either because it was intrinsic to the crime charged or because it was relevant to Defendant's knowledge, motive, or intent and was not unduly prejudicial when weighed against its probative value. The district court ultimately instructed the jury that it could consider the evidence "to determine whether the defendant had the state of mind or intent necessary to commit the crime charged." Defendant challenges the admissibility of the evidence on appeal, arguing that (1) Bouldin's testimony and recordings were insufficient to prove that the uncharged bribe occurred, and (2) the probative value of the evidence was

13

substantially outweighed by its undue prejudice.[5] We conclude that evidence of the uncharged land-sale bribe was properly admitted.

Federal Rule of Evidence 404(b) provides that evidence "of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," although such evidence may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(1)-(2). At the threshold, however, evidence of an uncharged crime or "other act" must be sufficient to support a finding that the crime or act actually occurred. *United States v. Gutierrez-Mendez*, 752 F.3d 418, 423–24 (5th Cir. 2014) (citing FED. R. EVID. 104(b)). If evidence of the crime or act is sufficient, its admissibility under Rule 404(b) hinges on whether (1) it is relevant to an issue other than the defendant's character, and (2) it "possess[es] probative value that is not substantially outweighed by its undue prejudice" under Federal Rule of Evidence 403. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978). We review a district court's evidentiary rulings for abuse of discretion, although the standard is "'heightened' when evidence is admitted under [Rule] 404(b), because '[e]vidence in criminal trials must be strictly relevant to the particular offense charged.'" *United States v. Kinchen*, 729 F.3d 466, 470 (5th Cir. 2013) (quoting *United States v. Jackson*, 339 F.3d 349, 354 (5th Cir. 2003)).

The predicate question in assessing the admissibility of evidence of an uncharged offense under Rule 404(b) is whether the Government offered sufficient proof of the offense. "If the proof is insufficient, the judge must

---

[5] Defendant also challenges the district court's alternative ruling that the evidence was intrinsic. However, because we conclude that, at minimum, the evidence was properly admitted to show intent under Rule 404(b), we need not address the intrinsic/extrinsic dichotomy.

exclude the evidence because it is irrelevant." *Beechum*, 582 F.2d at 913. Proof of an uncharged offense is sufficient if "the jury could reasonably find" that the offense occurred "by a preponderance of the evidence." *Gutierrez-Mendez*, 752 F.3d at 424 (quoting *Huddleston v. United States*, 485 U.S. 681, 692 (1988)). Defendant asserts, without providing specifics, that any evidence of the uncharged land-sale bribe in this case was "conclusory" in nature and based on "speculation." Yet we think it is Defendant's argument on this point, and not the evidence, that is conclusory. The Government presented testimony and recordings reflecting that, during the meetings at which Defendant agreed to accept a bribe for his influence in awarding the ditch-spraying contract, he also agreed to accept $2,000 for his help with a land purchase and business expansion. We believe that this evidence was sufficient to allow the jury to find that the uncharged bribe took place, and Defendant has not provided a cogent argument to persuade us otherwise.

We next consider whether evidence of the uncharged bribe was relevant to an issue other than the defendant's character. We have previously recognized that an uncharged offense is relevant to intent, a proper non-character issue under Rule 404(b), if it "requires the same intent as the charged offense," because evidence of the uncharged offense then "lessens the likelihood that the defendant committed the charged offense with innocent intent." *Beechum*, 582 F.2d at 913. The uncharged land-sale bribe in the present case required the same intent as the charged ditch-spraying-contract bribe, and Defendant does not argue to the contrary.

The only remaining question is thus whether the probative value of the uncharged bribe evidence was substantially outweighed by its undue prejudice under Rule 403. "We consider several factors" in answering this question: "(1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two

offenses, and (4) the court's limiting instructions." *Kinchen*, 729 F.3d at 473 (citing *United States v. Sanchez*, 988 F.2d 1384, 1394 & n.14 (5th Cir. 1993)). In *Beechum*, for instance, we determined that evidence of the defendant's possession of stolen credit cards was admissible to show his intent to possess a stolen silver dollar, the crime for which he was prosecuted. 582 F.2d at 909. On the Rule 403 question, we concluded that the evidence's probative value was not substantially outweighed by its undue prejudice, because (1) it was "clear before the case went to trial that the crucial issue would be [the defendant's] intent," which he contested repeatedly; (2) the "overall similarity" of the two offenses "generate[d] sufficient probity" to meet Rule 403; (3) the offenses occurred close in time (as both the cards and silver dollar were possessed and recovered contemporaneously); and (4) the court "gave extensive instructions to the jury on the limited use" of the evidence. *Id.* at 915–18.

In the present case, as in *Beechum*, all four factors weigh in favor of the uncharged bribe evidence's admissibility. First, intent was a significant and disputed issue at trial; as early as opening statements, counsel for Defendant argued that Defendant "was never intending to take a bribe." Second, the uncharged and charged offenses—bribes offered by Bouldin in exchange for Defendant's political influence—were highly similar. Third, both bribes were discussed in the same conversations and consummated concurrently. Fourth, the district court thoroughly instructed the jury on the proper use for the evidence, as it repeatedly emphasized that evidence of the land-sale bribe was to be considered on the issue of Defendant's "state of mind or intent." Moreover, just as in *Beechum*, the uncharged bribe evidence was "not of a heinous nature," nor would it have "incite[d] the jury to irrational decision by its force on human emotion." *Id.* at 917. Thus, the evidence was not unduly prejudicial when weighed against its probative value under Rule 403.

No. 14-60688

Because we have determined that evidence of the land-sale bribe was relevant to Defendant's intent and met the requirements of Rule 403, we conclude that the district court did not abuse its discretion in admitting it.

*E. The Sentencing Enhancement*

Defendant's final claim is that the district court erred when it imposed a two-level sentencing enhancement for obstruction of justice based on Defendant's alleged perjury at trial. Section 3C1.1 of the Federal Sentencing Guidelines provides for a two-level enhancement if the defendant willfully attempted to obstruct or impede the administration of justice by, inter alia, committing perjury. U.S. SENTENCING GUIDELINES MANUAL § 3C1.1 & cmt. nn. 1 & 4(B). For purposes of § 3C1.1, a defendant commits perjury if he provides "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan,* 507 U.S. 87, 94 (1993). We review the district court's application or interpretation of the Sentencing Guidelines de novo and its factual findings, such as a finding of obstruction of justice, for clear error. *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008) (citing *United States v. Adam*, 296 F.3d 327, 334 (5th Cir. 2002)). A factual finding is not clearly erroneous if it is "plausible in light of the record as a whole." *Id.* (citing *United States v. Harms*, 442 F.3d 367, 378 (5th Cir. 2006)). We also give particular deference to findings that are based on credibility determinations. *United States v. Powers*, 168 F.3d 741, 753 (5th Cir. 1999) (citing *Johnson v. Collins*, 964 F.2d 1527, 1532 (5th Cir. 1992)).

In imposing the enhancement in this case, the court relied on the Presentence Investigation Report ("PSR"), which recommended a finding of perjury based on Defendant's testimony that the money he received was a loan rather than a bribe. The PSR noted that this testimony was contrary to taped conversations with Defendant and other testimony indicating that he admitted

17

the bribe to FBI agents. Defendant contends on appeal that imposition of the sentencing enhancement amounts to punishing him for exercising his constitutional right to testify. He also objects to reliance on any admission he supposedly made to FBI agents, because he never approved or adopted such an admission in writing. Lastly, he dismisses the perceived "conflict" between his testimony and the FBI testimony regarding his alleged admission as, at most, a result of confusion, mistake, or faulty memory.

We conclude that the district court did not clearly err in imposing an enhancement for obstruction of justice. While Defendant focuses on the conflict between his testimony and the FBI testimony regarding his alleged admission, he fails to address the fact that the PSR also relied on taped conversations in which Defendant repeatedly discussed receiving money but never referenced a loan. Furthermore, Defendant's suggestion that a perjury finding can only be based on tape-recorded or independently verified inconsistent statements is contrary to the law. Although Defendant is correct to identify that *United States v. McCauley* involved a conflict between one defendant's trial testimony and his own prior recorded statements, *McCauley* does not hold or even suggest that a perjury finding requires inconsistencies to be memorialized on tape. *See* 253 F.3d 815, 821 (5th Cir. 2001). To the contrary, this court has several times upheld a finding of perjury under § 3C1.1 in light of contradictory testimony from other witnesses at trial. *See, e.g.*, *United States v. Flores*, 640 F.3d 638, 644 (5th Cir. 2011) (finding that defendants' assertions were "not worthy of credence" because they were "flatly contradicted by other witnesses"); *United States v. Montelongo,* 539 F. App'x 603, 606 (5th Cir. 2013) (per curiam) (concluding that the district court's finding of false testimony was not clearly erroneous in light of directly contradictory testimony). In any event, Defendant's argument on this point similarly fails to account for the

18

conversations Defendant had, which *were* tape-recorded, in which he discussed payments but never suggested such payments were loans.

Just as in *Flores*, Defendant's testimony here was "flatly contradicted by other witnesses," tape-recorded conversations, and "the ultimate finding of the jury." Thus, the finding that Defendant perjured himself is plausible in light of the record as a whole, and we conclude that the district court did not clearly err by imposing an obstruction of justice enhancement.

AFFIRMED.