# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 25, 2024

Lyle W. Cayce
Clerk

———————

No. 23-50091

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Luis Armando Caballero Grajeda,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:21-CR-671-2

_____

Before Elrod, Ramirez, *Circuit Judges*, and Ashe, *District Judge*.[*]
Irma Carrillo Ramirez, *Circuit Judge*:[†]

Luis Armando Caballero Grajeda ("Caballero") appeals his convictions for possession and conspiracy to possess with intent to distribute narcotics, and his 260-month sentence. He challenges the admission of certain bad-act evidence, sufficiency of the evidence, denial of his requested

---

[*] United States District Judge for the Eastern District of Louisiana, sitting by designation.

[†] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-50091

jury instruction, denial of his motion for a new trial, and denial of a mitigating role adjustment. We AFFIRM.

I

On March 9, 2021, during an investigation of a drug trafficking organization ("DTO"), law enforcement agents observed a vehicle leaving a "stash house" in El Paso, Texas. A traffic stop of the vehicle resulted in the seizure of 3.66 kilograms of methamphetamine. While searching the driver, agents found a scrap of paper bearing the address of "1049 Eastside Road." The driver's twin brother, Marvin Guadalupe Gutierrez-Hinojos ("Gutierrez"),[3] assumed responsibility for the drugs, admitted both brothers' involvement in the DTO, and agreed to cooperate with the Federal Bureau of Investigation ("FBI"). The brothers were not arrested that day.

That same night, a high-ranking DTO official, Manuel "Manny" Salaices ("Salaices"), his sister, Liliana Salaices, and others began threatening Gutierrez and demanding the return of the seized drugs. At Salaices's request, the brothers traveled to Juárez, Mexico, where they were first taken to a party attended by Caballero. They were then taken to a second location where Caballero interrogated Gutierrez about the seized drugs while pointing a "long and brown" gun at him. Gutierrez admitted the drugs had been seized by the FBI. He was eventually taken to a third location where he remained for about a month, tied to a chair without being allowed to get up to use the bathroom.[4] His twin brother has not been seen since the kidnapping.

---

[3] Gutierrez is a co-defendant in this case.

[4] Gutierrez testified that he initially believed he had been held for three months, but after looking at his phone records, he realized it had only been a month.

2

No. 23-50091

On March 24, 2021, FBI agents observed a U-Haul arrive at a warehouse located at 1049 Eastside Road ("Eastside warehouse"),[5] where it remained for about an hour and half. After it left the warehouse, agents stopped the U-Haul for a traffic violation. Caballero was driving and Salaices's cousin, Myra Salaices, was in the passenger seat. Caballero consented to a search. A drug-detecting dog alerted to the back of the U-Haul, but agents only found furniture. Caballero then directed agents to a unit in a warehouse on 3700 Durazno Avenue ("Durazno unit"), where he was meant to deliver the furniture. He unlocked the unit and provided written consent for a search.

The Durazno unit was mostly empty except for a white van parked in its right corner. Lined up along the outside of the van in plain sight were several shipping boxes, dusty plastic bins, and trash bags, all filled with bundles of narcotics.[6] Several bundles of narcotics were also on the floor next to the bins. Sticky notes with various numbers and dates were attached to some of the bins and trash bags. Agents found a total of 308 bundles of narcotics, consisting of approximately 336 kilograms of methamphetamine, 37 kilograms of cocaine, and 20 kilograms of fentanyl, with an estimated value of $3.5 million. Caballero was arrested and later indicted for possession and conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, 400 grams or more of fentanyl, and 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1).

Caballero went to trial on May 5, 2022. In his opening statements, his counsel asserted that "[Caballero] was hired to move some furniture from

_____

[5] This is the same address that was written on the scrap of paper found in Gutierrez's twin brother's pocket during the March 9, 2021 traffic stop.

[6] The plastic bins also contained various accessories for assault weapons.

one warehouse to another and that's it. He didn't know there were drugs in the warehouse. He didn't know that the furniture he was being paid to move might be used in some other way."

The jury heard testimony that the DTO transported drugs by delivering vehicles containing drugs to parking garages or stash houses. Gutierrez testified that he became involved in drug trafficking through Salaices's sister and cousin. He was hired to deliver drugs, wrap furniture at the Eastside warehouse where his twin brother and Salaices's cousin worked, and deliver cars containing drugs to parking garages. In the warehouse, he saw sticky notes that indicated the dates on which cars were delivered and drugs were removed as well as the amount of drugs inside. The van found inside the Durazno unit belonged to his twin brother; it was often taken to the Eastside warehouse. He suspected that furniture was used to smuggle drugs into the United States because it would be taken out of the warehouse, purportedly for repair, but it was later returned in the same or worse condition. A manager for the warehouses testified that the twin brothers paid rent for the Durazno unit and Eastside warehouse on behalf of Salaices.

Prior to trial, the Government had informed Caballero of its intent to offer evidence of his involvement in Gutierrez's kidnapping as an act intrinsic to the charged drug conspiracy, or, alternatively, as an extrinsic act to rebut claims of mistake or accident, or to prove Caballero's knowledge about drugs and drug trafficking. Caballero moved to preclude admission of the evidence. During an evidentiary hearing outside the presence of the jury, the Government proffered Gutierrez's testimony about the kidnapping. Over Caballero's objection, the court held that the testimony was credible and admitted it as an exception to Federal Rule of Evidence 404(b), subject to the condition that the jury would not hear that Gutierrez was tied to a chair for his entire captivity and that his twin brother had not been seen since the

kidnapping. Caballero also moved to preclude Gutierrez from testifying about the presence of a weapon. The court denied the motion.

After Gutierrez testified about Caballero's involvement in his kidnapping, the Government introduced a photo line-up by which Gutierrez had identified Caballero. It also presented video evidence from the day before Caballero's arrest, which showed that he was the only person to enter the Durazno unit until agents arrived the next day.

After the Government rested its case, Caballero moved for a judgment of acquittal and the court denied the motion. The defense then rested its case without presenting any evidence, Caballero renewed his motion, and it was again denied. Over his objection, the court gave a pattern jury instruction that did not include his proposed language concerning guilty knowledge. The jury returned a guilty verdict on all six counts against Caballero.

On January 31, 2023, the district court sentenced Caballero to 260 months of imprisonment, to be followed by a five-year term of supervised release.

On December 9, 2022, Caballero filed a Rule 33 motion for a new trial and evidentiary hearing based on newly discovered evidence. He argued that on July 7, 2022, the Government contacted Caballero's counsel and tendered an audio recording of a conversation between an FBI agent and Salaices. In hopes of cooperating with the FBI, Salaices had called the agent three weeks after the jury rendered the verdict and attempted to exculpate Caballero. Salaices claimed that Gutierrez was a liar, that Caballero did not know about the drug conspiracy, and that the DTO had brought Caballero into the United States at 9:00 a.m. on the day he was arrested. The Government responded that agents had confronted Salaices with the video evidence showing Caballero in the unit the day before his arrest, but he did not have an

explanation.[7] Salaices went missing after speaking with the agents. The court denied the motion for a new trial.

On appeal, Caballero argues that the district court erred by: (1) denying his motion to preclude the admissibility of the alleged kidnapping evidence; (2) denying his motion for judgment of acquittal; (3) denying his requested jury instruction; (4) denying his motion for a new trial; and (5) denying his request for a mitigating role reduction.

## II

"We review the district court's admission of extrinsic offense evidence over a 404(b) objection under a 'heightened' abuse of discretion standard." *United States v. Jones*, 930 F.3d 366, 373 (5th Cir. 2019) (citations omitted). This is because "evidence in criminal trials must be strictly relevant to the particular offense charged." *United States v. Meyer*, 63 F.4th 1024, 1040 (5th Cir. 2023) (quoting *United States v. Smith*, 804 F.3d 724, 725 (5th Cir. 2015)). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (citations omitted). "If we find an error in the admission or exclusion of evidence, we review for harmless error." *United States v. Sumlin*, 489 F.3d 683, 688 (5th Cir. 2007).

## A

Caballero argues that the district court erred in admitting Gutierrez's testimony about Caballero's involvement in and use of a firearm during the

---

[7] The Government also argued that Caballero had admitted in a recorded post-arrest statement that he entered the United States two days before his arrest.

alleged kidnapping under Federal Rule of Evidence 404(b) because it was not relevant to the charged offenses.[8]

Under Rule 404(b), evidence of a defendant's past crime or other similar act is generally inadmissible to prove his character but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b). Rule 404(b) evidence must be "sufficient to support a finding that the crime or act actually occurred" by a preponderance of evidence. *Smith*, 804 F.3d at 735. "If the proof is insufficient, the judge must exclude the evidence because it is irrelevant." *United States v. Beechum*, 582 F.2d 898, 913 (5th Cir. 1978) (en banc). If the evidence is sufficient, "its admissibility under Rule 404(b) hinges on whether (1) it is relevant to an issue other than the defendant's character, and (2) it 'possess[es] probative value that is not substantially outweighed by its undue prejudice' under Federal Rule of Evidence 403." *Smith*, 804 F.3d at 735 (quoting *Beechum*, 582 F.2d at 911). An extrinsic act is relevant to something other than a defendant's character when it is offered to prove one of Rule 404(b)'s enumerated purposes. *United States v. Kinchen*, 729 F.3d 466, 472 (5th Cir. 2013).

The district court held that Gutierrez's testimony was admissible as an exception to Rule 404(b) to rebut Caballero's contention during opening argument that he did not know there were drugs in the warehouse or that the furniture he was being paid to move would be used to traffic drugs. We agree.

---

[8] Caballero argues that Gutierrez testified that he was tied to a chair for the duration of his captivity in contravention to the court's 404(b) ruling. The trial transcript does not reflect this testimony, however.

No. 23-50091

To indicate knowledge, extrinsic evidence must be "of such a nature that its commission involved the same knowledge required for the offense charged." *Beechum*, 582 F.2d at 912 n.15. Here, the alleged kidnapping occurred soon after law enforcement's seizure of the methamphetamine. Salaices, his sister, and other members of the DTO contacted Gutierrez about the seized methamphetamine. He was taken to a location where he was interrogated and threatened with a gun by Caballero to elicit information about the missing drugs. The purpose of the kidnapping was to recover the seized drugs. As the district court explained, "the use of firearms in the drug trade is certainly something that we would see." *See United States v. Garza*, 118 F.3d 278, 285 (5th Cir. 1997) (admitting extrinsic evidence of silencers and silencer-making materials because "[f]irearms and silencers are . . . tools-of-the-trade of drug trafficking").[9] Because the details of the kidnapping demonstrated Caballero's role and voluntary participation in the conspiracy, its commission necessarily involved knowledge of the drug trafficking conspiracy. *See Beechum*, 582 F.2d at 911 n.15. The district court did not err in finding that the alleged kidnapping was relevant to something other than Caballero's character.[10]

B

Caballero next argues that even if the kidnapping testimony is admissible under Rule 404(b), its prejudicial effect outweighs its probative value.

_____

[9] During the trial, Caballero argued that the weapon testimony was not probative of the kidnapping itself. But to be admissible, the extrinsic evidence must be relevant to the *drug conspiracy*, not the kidnapping. *See* Fed. R. Evid. 404(b). We conclude that it is.

[10] In its notice, the Government argued that the kidnapping testimony was admissible because it was intrinsic to the charged crimes. The district court rejected that argument.

Rule 404(b) evidence must "possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." *Id.* at 911. Under Rule 403, relevant evidence may be excluded for prejudice, confusion, waste of time, or misleading the jury. FED. R. EVID. 403. Ascertaining probative value and unfair prejudice under Rule 403 requires a "commonsense assessment of all the circumstances surrounding the extrinsic offense." *Kinchen*, 729 F.3d at 473 (quoting *Beechum*, 582 F.2d at 914). A district court's "informed judgment in weighing [these] factors" is given great deference. *Id.*

"Extrinsic evidence is highly probative in a conspiracy case." *United States v. LeBaron*, 156 F.3d 621, 625 (5th Cir. 1998). "As to . . . the prejudicial impact of the evidence under Rule 403, we consider '(1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions,' in addition to the 'overall prejudicial effect of the extrinsic evidence.'" *Meyer*, 63 F.4th at 1040–41 (quoting *United States v. Juarez*, 866 F.3d 622, 627 (5th Cir. 2017)).

The district court held that the testimony's probative value was not substantially outweighed by its prejudicial effect. To minimize its prejudicial impact, however, the court did not allow Gutierrez to testify (1) that his twin brother has been missing since the kidnapping; and (2) that he was tied to a chair for his entire captivity and forced to relieve himself in the chair.[11]

_____

[11] The district court clarified that testimony about Gutierrez being "tied to the chair [was] not a problem," but testimony that he was "tied to the chair for 30 days and [had] to use the bathroom while sitting in the chair . . . add[ed] nothing to the Government's need for this evidence."

No. 23-50091

1

The first three factors weigh in favor of admission. First, Caballero denied knowing that there were drugs in the unit or that the furniture he was moving would be used in the drug trade. The Government demonstrated sufficient need for the kidnapping testimony to prove Caballero's knowledge of the ongoing conspiracy. *See Juarez*, 866 F.3d at 627 ("Extrinsic evidence has high probative value when intent is the key issue at trial. This is particularly true when the evidence is 'necessary to counter [a defendant's] claim that he was merely an ignorant participant in the operation and never knowingly agreed to participate in a[n] [illegal] business.'") (alterations in original) (citations omitted). Second, "[t]he more closely an extrinsic offense resembles the charged offense, the greater the prejudice to the defendant." *Kinchen*, 729 F.3d at 473 (citations omitted). A kidnapping is dissimilar to a drug trafficking conspiracy and to drug possession. The third factor also weighs in favor of admission because "temporal remoteness depreciates the probity of the extrinsic offense." *See Beechum*, 582 F.2d at 915. Here, the alleged kidnapping occurred the same day that law enforcement seized the drugs and within the timeframe of the charged drug conspiracy.

The fourth consideration is the court's limiting instruction. A court's limiting instruction greatly minimizes the risk of undue prejudice. *United States v. Crawley*, 533 F.3d 349, 355 (5th Cir. 2008). Caballero did not request a limiting instruction regarding Gutierrez's testimony, and the district court did not provide one. "Where, as here, a limiting instruction is not requested by defense counsel, the court's failure to provide such an instruction on its own is tested under the plain error standard of Fed. R. Crim. P. 52(b)." *United States v. Prati*, 861 F.2d 82, 86 (5th Cir. 1988) (footnote omitted). We correct plain error if it "seriously affect[s] the fairness, integrity[,] or public reputation of judicial proceedings." *United States v. Daniels*, 252 F.3d 411, 414 (5th Cir. 2001).

Here, the jury charge stated: "The defendant is not on trial for any act, conduct, or offense not alleged in the indictment." The court cautioned the jury regarding the credibility of witnesses, including co-defendants and accomplices, and instructed it on the charged offenses, and the elements of those crimes. "The jury was fully aware of the charges against the defendant; there is nothing suggesting they were confused about what they could and could not consider." *Prati*, 861 F.2d at 87. The court's failure to caution the jury to consider the kidnapping testimony as only related to Caballero's intent and knowledge was not plain error. *See id*. at 86–87 (finding no plain error where a trial court failed to provide a limiting instruction regarding 404(b) evidence, but provided an identical jury charge).

2

"Even if all four factors weigh in the Government's favor, we must still evaluate the district court's decision under a 'commonsense assessment of all the circumstances surrounding the extrinsic offense.'" *Juarez*, 866 F.3d at 629 (quoting *Beechum*, 582 F.2d at 914). "Such circumstances generally include the nature of the prior offense and the likelihood that the 404(b) evidence would confuse or incite the jury," namely, whether the prior offense is of a heinous nature, violent, greater in magnitude than the charged crimes, or whether it "occup[ied] more of the jury's time than the evidence of the charged offenses." *Id*.

Caballero argues that kidnapping is an offense likely to "incite a jury," and that the weapon and chair testimony demonstrate the "heinous nature" of the kidnapping. Although the testimony about the violent nature of the kidnapping was prejudicial, the kidnapping was not "greater in magnitude" than a drug trafficking conspiracy in which $3.5 million worth of drugs were seized. *Compare United States v. Fortenberry*, 860 F.2d 628, 632 (5th Cir. 1988) (finding that Rule 404(b) testimony that a defendant attacked three

people, including a two-year old child, with a crossbow and committed three incidents of arson and vandalism involving a firearm, was of "a magnitude far greater" than the charged offense of placing a small explosive device on a car that caused minimal damage), *with Meyer*, 63 F.4th at 1042 (finding that admitting 404(b) testimony about an incident of domestic violence was not unduly prejudicial, where the defendant was on trial for his involvement in a drug trafficking conspiracy). Importantly, the district court did not admit the most "heinous" parts of the kidnapping, including how Gutierrez was tied to a chair for a month and not allowed to go to the bathroom and the fact that his twin brother had not been seen since, and the testimony was brief and did not occupy more of the jury's time than evidence of the charged offenses.

Accordingly, the district court did not abuse its discretion in concluding that the probative value of the kidnapping and weapon testimony was not outweighed by its prejudicial effect.

## III

Caballero next challenges the denial of his motion for judgment of acquittal. He argues there was insufficient evidence to convict him.

A denial of a motion for judgment of acquittal based on insufficient evidence is reviewed *de novo*. *Meyer*, 63 F.4th at 1035. A jury verdict will be affirmed "if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt." *Smith*, 804 F.3d at 731 (quoting *United States v. Girod*, 646 F.3d 304, 313 (5th Cir. 2011)). "[W]e do not evaluate the weight of the evidence or the credibility of the witnesses," *Girod*, 646 F.3d at 313, as that authority remains with the jury, *United States v. Holmes*, 406 F.3d 337, 351 (5th Cir. 2005). Rather, we "view the evidence in the light most favorable to the verdict, drawing all reasonable inferences to support [it]." *Smith*, 804 F.3d at 731. "We are concerned only with 'whether the jury made a rational decision, not

with whether its verdict was correct on the issue of guilt or innocence.'" *United States v. Frye*, 489 F.3d 201, 207 (5th Cir. 2007) (citation omitted).[12]

A

To convict Caballero of conspiracy to possess with intent to distribute various narcotics, the Government was required to show: "(1) the existence of an agreement between two or more persons to violate narcotics laws, (2) knowledge of the conspiracy and intent to join it, and (3) voluntary participation in the conspiracy." *Meyer*, 63 F.4th at 1036 (quoting *United States v. Peters*, 283 F.3d 300, 307 (5th Cir. 2002)). Caballero challenges the sufficiency of the evidence as to the first element.

Mere presence at the scene or association with co-conspirators is insufficient to establish the existence of a conspiracy. *See United States v. Thomas*, 690 F.3d 358, 366 (5th Cir. 2012). An agreement can be explicit or tacit, however, and its existence "may be established solely by circumstantial evidence and may be inferred from 'concert of action.'" *United States v. Chon*, 713 F.3d 812, 818–19 (5th Cir. 2013) (per curiam) (citation omitted).

At trial, the jury heard testimony that the DTO kept track of drug deliveries through sticky-notes. Agents found similar sticky-notes in the Durazno unit, and Gutierrez testified that he saw similar sticky-notes in the Eastside warehouse. The jury also heard Gutierrez's testimony that Salaices's sister and cousin were involved in recruiting him into the DTO

---

[12] Because Caballero moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 at the close of the Government's case and renewed his motion after the defense rested without presenting any evidence, Caballero properly preserved this claim. *See United States v. Daniels*, 723 F.3d 562, 569 (5th Cir. 2013), *modified in part on reh'g*, 729 F.3d 496 (5th Cir. 2013) (finding that a defendant who does not present a case is not required to renew his motion for acquittal at the close of all evidence to preserve his claims for review).

and that the cousin worked at the Eastside warehouse with him. When Caballero was stopped, he was en route to the Durazno unit where the drugs were found, in a U-Haul carrying broken and used furniture, with Salaices's cousin. The jury saw video surveillance of Caballero, and no one else, entering and exiting the Durazno unit the day before the search. Gutierrez testified that Salaices and Caballero believed that he and his twin brother stole the drugs seized on March 9, 2021, which prompted the kidnapping and interrogation in Mexico.

When viewing all the evidence in the light most favorable to the guilty verdict, a reasonable jury could infer that multiple actors were part of a large-scale trafficking enterprise due to various connections between Caballero, Gutierrez, Gutierrez's twin brother, Salaices, and Salaices's relatives; between the Eastside warehouse and Durazno unit; and between the seized drugs and Gutierrez's kidnapping. The jury was entitled to evaluate and resolve whether Gutierrez's testimony was credible, *see Holmes*, 406 F.3d at 351, and this court defers to the jury's credibility findings. *United States v. Dadi*, 235 F.3d 945, 951 (5th Cir. 2000). The evidence was sufficient for the jury to find an agreement to sell and possess various illegal narcotics.

B

To sustain Caballero's convictions for possession with intent to distribute narcotics, the Government had to show "(1) the defendant knowingly possessed a controlled substance; (2) the substance was in fact [the controlled substance]; and (3) the defendant possessed the substance with the intent to distribute it." *Meyer*, 63 F.4th at 1038 (citation omitted). Caballero argues that the Government failed to prove that he actually or constructively possessed the drugs found in the warehouse. He claims that his "mere presence" in the Durazno unit is akin to a passenger's mere presence in a vehicle in which drugs were found, which is insufficient to

establish possession. *See, e.g.*, *United States v. Gordon*, 700 F.2d 215, 217 (5th Cir. 1983) (reversing passenger-defendant's conviction where there was no evidence "beyond [the defendant's] 'mere presence' in the truck, to indicate that he had maintained control over the contraband").

"Mere presence in the area where drugs are found is insufficient to support a finding of possession." *United States v. Cordova-Larios*, 907 F.2d 40, 42 (5th Cir. 1990). Possession of a controlled substance "may be actual or constructive, may be joint among several defendants, and may be proven by direct or circumstantial evidence." *United States v. Ramos-Cardenas*, 524 F.3d 600, 605 (5th Cir. 2008). "Constructive possession is 'ownership, dominion, or control over the contraband itself *or* dominion or control over the premises in which the contraband is concealed.'" *United States v. Fells*, 78 F.3d 168, 170 (5th Cir. 1996) (quoting *United States v. Mergerson*, 4 F.3d 337, 349 (5th Cir. 1993)). "Actual possession occurs when a 'defendant knowingly has direct physical control over a thing at a given time.'" *United States v. Fields*, 977 F.3d 358, 365 (5th Cir. 2020).

The Government presented evidence that Caballero was more than "merely present" in the warehouse. The jury heard that on the day of his arrest, he was transporting furniture to the Durazno unit, he knew the combination to the unit's lock, he consented to the search of the unit, and agents found 308 bundles of narcotics in plain sight. Video surveillance showed that only Caballero had accessed the unit in the days before the drugs were found. Viewing the evidence in the light most favorable to the verdict, a reasonable jury could find that he had constructive possession of the drugs because he had dominion or control over the unit where the drugs were kept. *See Fells*, 78 F.3d at 170.

Accordingly, the district court did not err in denying his Rule 33 motion for a judgment of acquittal because a jury could have found, beyond a

No. 23-50091

reasonable doubt, that Caballero participated in the conspiracy and had constructive possession of the drugs.

IV

Caballero argues that the district court abused its discretion by not instructing the jury on "mere presence" as it pertained to the charges of possession with intent to distribute.

The jury charge contained the following definition: "The word 'knowingly,' as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident."

Caballero proposed that the following language be added to the end of the definition:

> Guilty knowledge may not be inferred solely from the defendant's alleged possession or control of an item. The government may not rely upon a defendant's ability to access a location to prove that the defendant knew that he possessed a controlled substance. While these are factors you may consider, the government must prove that there is other evidence indicating the defendant's guilty knowledge of a controlled substance in a location.

He also requested that the following language be included under the possession with intent to distribute instruction: "Recall that guilty knowledge may not be inferred solely from the defendant's alleged possession, control, or access to a location. The Government must prove there is other evidence indicating the defendant's guilty knowledge of a controlled substance in a location."

16

No. 23-50091

Contrary to his argument on appeal, Caballero requested a "guilty knowledge" instruction, not a "mere presence" instruction.[13] Because he did not object to the omission of a "mere presence" instruction, we review for plain error. *Meyer*, 63 F.4th at 1033. "A jury instruction is plain error if (1) it was erroneous; (2) the error was plain; and (3) the plain error affected the substantial rights of the defendant." *Id.* (quoting *United States v. Percel*, 553 F.3d 903, 909 (5th Cir. 2008) (internal quotation marks and citation omitted)). Caballero must show that "the charge, considered as a whole, is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice." *See Prati*, 861 F.2d at 86 (citation omitted).

The district court's instructions mirrored the pattern jury instructions. *See* Fifth Circuit Pattern Jury Instructions (Criminal) §§ 1.33, 1.41 (2019). A district court does not err by giving a charge that tracks this court's pattern instructions and is a correct statement of the law. *See United States v. Whitfield*, 590 F.3d 325, 354 (5th Cir. 2009). Nor does Caballero argue that the district court incorrectly instructed the jury. Instead, he sought an additional instruction that also correctly stated the law. The district court was "not required to adopt additional proposed language" and did not "abuse its discretion in declining to do so." *United States v. Toure*, 965 F.3d 393, 403 (5th Cir. 2020). The possession instruction given by the district court is not plain error. *See, e.g.*, *United States v. McKnight*, 953 F.2d 898, 904 (5th Cir. 1992) (affirming denial of "mere presence" instruction where virtually identical jury instruction was given); *United States v. Hill*, 71 F.3d 875 (5th Cir. 1995) (unpublished) (affirming

_____

[13] Caballero's counsel objected to the failure to include the guilty knowledge language, stating, "I, do have a few objections, and I believe that in the proposed charge that I had specifically requested the [sic] some language be included regarding the guilty knowledge may not be inferred solely from the defendant's alleged possession or control of an item. It appears that the Court has taken that requested language out."

denial of "mere presence" instruction where virtually identical jury instruction was given).

Caballero has failed to show that the district court erred by not providing a "mere presence" jury instruction regarding the possession charges.

V

Caballero appeals the denial of his motion for a new trial based on new evidence.

Rule 33 provides that upon a defendant's motion, a district court can "vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). The denial of a motion for a new trial is reviewed for abuse of discretion, evaluating questions of law *de novo*. *United States v. Pratt*, 807 F.3d 641, 645 (5th Cir. 2015). "Such motions are disfavored and reviewed with great caution." *United States v. Severns*, 559 F.3d 274, 280 (5th Cir. 2009).

To assess the merits of Rule 33 motions based on newly discovered evidence, we apply a five-prong test known as the *Berry* rule. *United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004); *see Berry v. State*, 10 Ga. 511 (1851). Caballero must show that: (1) the evidence is newly discovered and was unknown to him at trial; (2) his lack of diligence was not the reason he failed to detect the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) if introduced at a new trial, the evidence would probably produce an acquittal. *Wall*, 389 F.3d at 467. The failure to satisfy any one factor is fatal to the motion. *United States v. Freeman*, 77 F.3d 812, 817 (5th Cir. 1996).

The district court denied Caballero's motion, finding that he failed to show he met *Berry* factors two through five. It specifically held that Caballero

No. 23-50091

failed to show due diligence because he could have contacted or interviewed Salaices prior to trial or called him to testify; the new evidence would mostly serve to impeach Gutierrez's testimony; the new evidence was not material because it was inadmissible hearsay; and if introduced at a new trial, it "would be subject to rigorous impeachment by the Government" and unlikely to produce a different result. We agree.

As to the second *Berry* factor, Caballero asserts that he did not lack due diligence in contacting Salaices; he instead chose not to contact him because he previously lied to law enforcement. "The precise testimony of any potential witness cannot be known until it is had." *United States v. Beasley*, 582 F.2d 337, 339 (5th Cir. 1978). Because the failure to satisfy even one *Berry* factor is fatal, the district court did not abuse its discretion in denying the motion.[14]

## VI

Caballero appeals the district court's denial of a mitigating-role adjustment to his sentence. The pre-sentence report ("PSR") calculated Caballero's total offense level to be 42, which included a base level of 38, a

---

[14] Caballero's motion also fails on the last three factors. Because Salaices accused Gutierrez of being a liar, the recording is primarily impeaching and therefore fails to satisfy the third *Berry* factor. *Wall*, 389 F.3d at 467. It also fails to satisfy the fourth *Berry* factor because it is inadmissible hearsay. *See United States v. Chapman*, 851 F.3d 363, 382 (5th Cir. 2017) ("[H]earsay evidence is not material because it is not admissible."). The district court rejected Caballero's argument that Salaices's statements in the recording were admissible under Federal Rule of Evidence 807 because the recording lacked the requisite indicia of reliability and would be subject to rigorous impeachment by the Government. We agree. *See United States v. Barnes*, 979 F.3d 283, 300 (5th Cir. 2020) (affirming the district court's ruling that forms signed by nurses implicated in fraud lacked indicia of reliability under Rule 807). Despite Caballero's assertions that Salaices's statements contradicted the Government's theory of the case and were therefore material to his innocence, he has not shown that the new statement would have probably resulted in an acquittal. *See Wall*, 389 F.3d at 467.

two-level increase for possessing a dangerous weapon, and a two-level increase for using a credible threat of violence. The minimum statutory term of imprisonment was 10 years. Caballero faced an advisory guideline sentence of 360 months to life. The PSR left the determination of whether Caballero's role in the conspiracy was aggravating or mitigating to the court.

Caballero objected to the PSR and argued for a two-level mitigating role reduction because his role in the criminal activity was substantially less than other participants. At sentencing, the district court overruled the objection, finding that Caballero's involvement in the kidnapping—specifically, that he held Gutierrez at gunpoint—proscribed the application of the minimal role guideline.

We review a district court's application of the Sentencing Guidelines *de novo* and its finding of facts, including whether a defendant was a minor or minimal participant, for clear error. *United States v. Torres-Hernandez*, 843 F.3d 203, 207 (5th Cir. 2016).

Section 3B1.2 of the Sentencing Guidelines "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n.3(A). If the court finds that the defendant's role in the offense is that of a minor participant, a two-level reduction should be applied. *Id.* § 3B1.2(b). A minor participant is any participant "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* § 3B1.2 cmt. n.5. "[I]n order to qualify as a minor participant, a defendant must have been peripheral to the advancement of the illicit activity.'" *United States v. Villanueva*, 408 F.3d 193, 204 (5th Cir. 2005) (citation omitted).

A defendant is only entitled to a mitigating role adjustment if he demonstrates by a preponderance of the evidence: "(1) the culpability of the

average participant in the criminal activity; and (2) that [he] was substantially less culpable than that participant." *United States v. Castro*, 843 F.3d 608, 613 (footnote omitted). In addressing relative culpability, courts should consider, among other things,

> (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt. n.3(C). When the § 3B1.2 factors have presented a "mixed bag," this court has affirmed the denial of a mitigating-role adjustment. *See, e.g.*, *United States v. Bello-Sanchez*, 872 F.3d 260, 264–65 (5th Cir. 2017) (quote at 264). Caballero now argues that the district court failed to consider that the second, third, and fourth factors weigh in his favor when determining his relative culpability.

While the evidence did not show that Caballero had any ability to make decisions for the conspiracy, or whether he profited or stood to profit from it, it showed the nature and extent of his participation in the conspiracy and his understanding of its scope and structure. In particular, the testimony established that he had knowledge of and access to the Durazno unit where the 308 bundles of drugs were found, he was stopped with a U-Haul filled with broken furniture, and the DTO used furniture to transport drugs into the center of the United States. Video surveillance of the Durazno unit showed that he had entered and exited it the day before the search. Further,

No. 23-50091

Gutierrez's testimony that he was kidnapped in Mexico by Caballero, Salaices, and other members of the DTO, and that Caballero threatened him with a gun and demanded to know where the missing drugs were, established Caballero's participation in the drug conspiracy.

Considering the record as a whole, the factors here present a "mixed bag," *see id.* at 264–65, and support the court's determination that Caballero was at least an average participant in the conspiracy. The district court did not clearly err in determining that Caballero failed to establish that he was entitled to a minor or minimal participant reduction under § 3B1.2.[15]

\*     \*     \*

We AFFIRM the judgment of the district court.

---

[15] Caballero also argues that the district court erroneously based its sentencing determination on the kidnapping testimony because it was contradicted by Salaices's post-trial statements. The district court found that Salaices's statements in the recording lacked the requisite indicia of reliability. The statements therefore could not have been considered by the court in its sentencing determination because a sentencing court may only consider inadmissible evidence if it "has a 'sufficient indicia of reliability to support its probable accuracy.'" *See United States v. Miranda*, 248 F.3d 434, 446 (5th Cir. 2001) (quoting *United States v. Patterson*, 962 F.2d 409, 415 (5th Cir.1992)).